IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZOETICS, INC. and ZOEMAIL, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-108 (JJF) |
| | ) | |
| YAHOO!, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT YAHOO! INC.'S
MOTION TO STAY ACTION AND TRANSFER ACTION
TO THE SOUTHERN DISTRICT OF NEW YORK**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendant Yahoo!, Inc.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
415.268.7000

Matthew M. D'Amore
Kyle W.K. Mooney
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
212.468.8000

Dated: April 21, 2006

TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                                  iii

NATURE AND STAGE OF PROCEEDINGS                                                                      1

SUMMARY OF ARGUMENT                                                                                 1

PRELIMINARY STATEMENT                                                                               2

STATEMENT OF FACTS                                                                                 3

    A.    Zoetics Acquires the Patents-In-Suit.                                         3

    B.    Zoetics Files for Bankruptcy Protection.                                      5

    C.    Zoetics Sues Yahoo! on the Patents-In-Suit.                                   7

    D.    This Action Lacks Any Significant Relationship with Delaware.                  7

ARGUMENT                                                                                            8

I.    THE COURT SHOULD STAY THIS ACTION UNTIL THE NEW YORK BANKRUPTCY COURT RESOLVES THE OWNERSHIP OF THE PATENTS-IN-SUIT.   8

    A.    The Bankruptcy Proceeding Will Simplify the Issues and Resolve Plaintiffs' Standing To Maintain This Action.   9

    B.    A Stay Will Not Unduly Prejudice or Impose any Clear Tactical Disadvantage on Plaintiffs.   12

    C.    A Stay is Particularly Appropriate Given That This Proceeding is At An Early Stage.   12

II.    THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.   13

    A.    Practical Considerations and Judicial Efficiency Strongly Favor Transferring this Action to the Southern District of New York.   15

    B.    Other Private and Public Factors Also Strongly Favor Transferring this Action to the Southern District of New York.   17

TABLE OF CONTENTS (continued)

                                                                          Page

    1.     Availability and convenience of critical non-party witnesses.   17

    2.     Convenience of the parties.   22

    3.     Local interest in the controversy.   24

CONCLUSION   26

TABLE OF CITATIONS

Page(s)

Cases

*3COM Corp. v. D-Link Sys., Inc.*,
    Civ. No. 03-014, 2003 WL 1966438 (D. Del. Apr. 25,
    2003)    20, 21, 22

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)    passim

*Alloc, Inc. v. Unilin Décor N.V.*,
    No. 03-253, 2003 WL 21640372 (D. Del. July 11, 2003)    9, 13

*APV N. Am., Inc. v. SIG Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002) (Farnan, J.)    23

*At Home Corp. v. Cox Commc'ns, Inc.*,
    No. 02-1486, 2003 WL 22350925 (D. Del. Oct. 8, 2003)
    (Farnan, J.)    23

*Bank of America, N.A. (USA) v. US Airways, Inc.*,
    No. 05-793, 2005 WL 3525680 (D. Del. Dec. 21, 2005)
    (Farnan, J.)    15

*Bayer Bioscience, N.V. v. Monsanto Co.*,
    No. 03-023, 2003 WL 1565864 (D. Del. Mar. 25, 2003)    16, 22

*Brunswick Corp. v. Precor Inc.*,
    No. 00-691, 2000 WL 1876477 (D. Del. Dec. 12, 2000)    23

*Cf. Free-Flow Packaging Int'l, Inc. v. Pactiv Corp.*,
    No. 03-1157, slip op. at 5-6 (D. Del. Apr. 8, 2005) (Farnan,
    J.)    11, 16

*Commissariat à L'Énergie Atomique v. Dell Computer Corp.*,
    No. 03-484, 2004 WL 1554382 (D. Del. May 13, 2004)    9, 12

*Continental Cas. Co. v. Am. Home Assurance Co.*,
    61 F. Supp. 2d 128 (D. Del. 1999) (Farnan, J.)    13, 22, 24

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985)    8

*Green v. Victor Talking Mach. Co.*,
    15 F.2d 869 (E.D.N.Y. 1926)    20

*Hill v. Equitable Bank, Nat'l Ass'n*,
    115 F.R.D. 184 (D. Del. 1987)                                      20

*Hyland v. Harrison*,
    No. Civ. A. 05-162, 2006 WL 288247 (D. Del. Feb. 7,
    2006) (Farnan, J.)                                                  8

*In re Policy Realty Corp.*,
    242 B.R. 121 (S.D.N.Y. 1999),
    *aff'd*, 213 F.3d 626 (2d Cir. 2000)                               16

*In re Zoetics, Inc.*,
    Case No. 04-16747 (Bankr. S.D.N.Y. filed Oct. 20, 2004)
    (JMP)                                                               1

*Invitrogen Corp. v. Stratagene Holding Corp.*,
    No. 00-620, slip op. (D. Del. Apr. 11, 2001) (Farnan, J.)    17, 23, 25

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)                                  14, 17, 25

*Kittay v. Landegger (In re Hegerstown Fibre Ltd. P'ship)*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002)                                15

*Koolik v. Markowitz*,
    40 F.3d 567 (2d Cir. 1994)                                         16

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)                                          8, 11, 13

*Memminger v. Infocure Corp.*,
    No. 00-707, 2000 U.S. Dist. LEXIS 22077
    (D. Del. Nov. 14, 2000) (Farnan, J.)                       14, 17, 18, 22

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999)                           17, 18, 21

*Merchant Bank of N.Y.  v. Grove Silk Co.*,
    11 F.R.D. 439 (M.D. Pa. 1951)                                      20

*Microchip Tech., Inc. v. Motorola, Inc.*,
    No. 01-264, 2002 WL 32332753 (D. Del. May 28, 2002)
    (Farnan, J.)                                                        9

*Nilssen v. Osram Sylvania, Inc.*,
    No. 00-695, 2001 WL 34368395
    (D. Del. May 1, 2001) (Farnan, J.)                         14, 17, 18, 22

*Ortho Pharm. Corp. v. Genetics Inst.*,
    52 F.3d 1026 (Fed. Cir. 1995)                 10

*Pegasus Dev. Corp. v. DirectTV, Inc.*,
    No. Civ. A. 00-1020, 2003 WL 21105073 (D. Del. May 14,
    2003)              9

*Pennwalt Corp. v. Purex Indus., Inc.*,
    659 F. Supp. 287 (D. Del. 1986)          18

*Pfizer, Inc. v. Elan Pharm. Research Corp.*,
    812 F. Supp. 1352 (D. Del. 1993)         10

*SAS of P.R. v. P.R. Tel. Co.*,
    833 F. Supp. 450 (D. Del. 1993) (Farnan, J.)     14

*Summa Four, Inc. v. AT&T Wireless Servs., Inc.*,
    994 F. Supp. 575 (D. Del. 1998)       9, 10, 11

Statutes

11 U.S.C. § 362(a)       15, 16

28 U.S.C. § 1391, § 1400       13

28 U.S.C. § 1404(a)       1, 13, 26

28 U.S.C. § 158(a)       16

Other Authorities

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 2461 (2005)       20

Defendant Yahoo! Inc. ("Yahoo!") respectfully submits this opening brief in support of its motion (i) to stay the above-captioned action, including the response to the Complaint, further pleadings and discovery, until the resolution of relevant proceedings before the United States Bankruptcy Court for the Southern District of New York and (ii) to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

## NATURE AND STAGE OF PROCEEDINGS

On February 21, 2006, Zoetics, Inc. ("Zoetics") and ZoEmail, LLC ("ZoEmail"; collectively with Zoetics, "Plaintiffs") filed a complaint against Yahoo! in this Court ("Complaint") alleging that Yahoo! infringed two patents developed by AT&T Corporation ("AT&T") relating to email addressing systems – U.S. Patent No. 5,930,479, entitled "Communications Addressing System" (the "'479 Patent"), and U.S. Patent No. 6,993,574, entitled "Web-Based Communications Addressing System and Method" (the "'574 Patent"; collectively with the '497 Patent, the "Patents-In-Suit"). No further activity in this case has occurred, and Yahoo! has not yet answered the Complaint.

## SUMMARY OF ARGUMENT

Yahoo! brings its motion to stay further proceedings in the case, and to transfer the action to the Southern District of New York where Zoetics is the Debtor in a previously-filed voluntary bankruptcy proceeding (the "Bankruptcy Proceeding") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") – *In re Zoetics, Inc.*, Case No. 04-16747 (Bankr. S.D.N.Y. filed Oct. 20, 2004) (JMP).

1. Because Zoetics' Bankruptcy Proceeding will directly address its putative ownership of the Patents-In-Suit, this action should be stayed pending the resolution of that issue.

2. Because this action has far more contacts with the Southern District of New York than with Delaware, because that Court will be more familiar with the relevant facts (as it is responsible for any appeals relating to the Patents-in-Suit arising out of Zoetics' bankruptcy), and because the Southern District of New York is more convenient to non-party witnesses and the parties, transfer to that forum is appropriate.

## PRELIMINARY STATEMENT

Zoetics acquired the Patents-In-Suit from AT&T in 2002. Not long after, however, Zoetics defaulted on its required payments to AT&T and sought protection from its creditors by filing a voluntary bankruptcy petition. Zoetics then hatched a ploy to use AT&T's collateral to pay off its debts, and brought suit against Yahoo! in this Court for infringing the '479 and '574 Patents. This action, however, is premature and, in any event, belongs in the Southern District of New York.

The ownership of the Patents-In-Suit, and Plaintiffs' standing to maintain this action, is not yet settled. AT&T already has sent a "Notice of Default" to Zoetics, filed a proof of secured claim in the Bankruptcy Court, and may seek to reclaim its patents or force their sale at liquidation in the Bankruptcy Proceeding. Either of these actions would immediately divest Plaintiffs of their purported standing to continue this infringement action against Yahoo!. Because the ownership of the Patents-In-Suit is likely to come before the Bankruptcy Court in the near future, the Court should stay this action in the interests of judicial efficiency and to avoid forcing the parties to incur

potentially wasteful and unnecessary litigation costs.  A reasonable stay of this action would not unduly prejudice or impose any tactical disadvantage on Plaintiffs.

Whether or not the Court stays the action, transfer to the Southern District of New York is warranted.  Practical considerations and the interests of judicial efficiency dictate that this infringement action – central to Zoetics' reorganization plan – be transferred to the district in which the underlying Bankruptcy Proceeding is pending. In addition, significant non-party witnesses are not amenable to subpoena for trial in Delaware, but could be compelled to appear in the proposed transferee forum.  Their availability at trial may be critical to Yahoo!'s defense of this action and is one of the most important factors in the transfer analysis.  The transfer of this action to the Southern District of New York would not in any way inconvenience Plaintiffs, which both maintain their principal executive offices in New York City – *less than one mile* from New York's Southern District courthouse.

## STATEMENT OF FACTS[1]

### A.    Zoetics Acquires the Patents-In-Suit.

The named inventor on the Patents-In-Suit is Robert J. Hall, an employee at AT&T's Florham Park, New Jersey research facility.  (Compl. Exs. A, B; App. Ex. 1 (Robert Hall Profile).)  According to papers filed with the United States Patent & Trademark Office (the "USPTO"), Zoetics acquired the '479 Patent and U.S. Patent Application No. 09/884,646 from AT&T in or about June of 2002.  (App. Ex. 2 (Patent

---

[1]    Citations herein take the following form:  "Compl. ¶ __" and "Compl. Ex. __" are to the Complaint, filed February 21, 2006, and exhibits thereto; "McFall Decl. ¶ __" are to the Declaration of Lisa G. McFall, dated April 19, 2006; and "App. Ex. __" are to exhibits included in the Appendix of Exhibits submitted herewith.

Assignment Abstract and Schedule D (Patent Assignment)).)  On January 31, 2006, the '574 Patent issued to Zoetics as a result of the 09/884,646 application.  (Compl. Ex. B.)

Zoetics did not receive this intellectual property unencumbered.  Rather, AT&T retained a security interest in the Patents-In-Suit pursuant to an agreement executed by the parties in May 2002 and filed with the USPTO (the "Security Agreement").  (App. Ex. 2 (Schedule F (Security Agreement)).)  The Security Agreement preserves for AT&T "a continuing security interest in and lien on . . . the IP Assets," which are defined as including, among other things, the Patents-In-Suit.  (App. Ex. 2 (Schedule F (Security Agreement, Section 2)).)  In the event of default, defined to include "any proceeding . . . instituted by or against [Zoetics] seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment or composition of it or its debts," AT&T would have the right to "forthwith collect, receive, or realize upon the Collateral [including the Patents-In-Suit], or any part thereof."  (*Id.* at Sections 7-8.)

Moreover, Zoetics agreed "that if an Event of Default shall occur, [Zoetics] shall take all actions necessary, appropriate or proper to transfer ownership of the Collateral [including the Patents-In-Suit] or any part thereof to [AT&T], including without limitation, filing any and all assignments of patent with the PTO . . . as is deemed by [AT&T] to be necessary, appropriate or proper under the circumstances."  (*Id.* at Section 8.)  In short, Zoetics gave AT&T powerful rights to recover its intellectual property – including the Patents-In-Suit – should Zoetics default on its payments or file for bankruptcy protection.

**B.**     **Zoetics Files for Bankruptcy Protection.**

Unable to pay AT&T for its purchases, on October 20, 2004, Zoetics filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.   (App. Ex. 3 (Voluntary Petition and Tucciarone Aff. ¶¶ 3, 4).)  In fact, AT&T is Zoetics' largest creditor – other creditors pale in comparison.   (App. Ex. 4 (Amended Statement of 20 Largest Creditors).)[2]  After a year of relative inaction by Zoetics, the deadline for filing proofs of claim has been set for May 1, 2006 (App. Ex. 5), and Zoetics' plan for reorganization is expected on June 30, 2006 (App. Ex. 6).  On April 11, 2006, AT&T filed a Proof of Claim for $4.7 million (plus interest and costs), and claimed a secured interest based on its agreements with Zoetics.  (App. Ex. 7.)

Zoetics, meanwhile, has made no secret of its strategy for paying its creditors and emerging from bankruptcy.  Its "plan" is to sue Yahoo! (and other alleged infringers of its intellectual property) and to force AT&T (and other creditors) to accept a portion of whatever recovery it obtains.  (App. Ex. 8 (Motion for Order Extending Debtor In Possession's Exclusive Right to File Plan of Reorganization and Seek Confirmation Thereof, at ¶¶ 8-11).)  To that end, in March 2005, Zoetics retained Niro Scavone Heller & Niro ("Niro Scavone") as special intellectual property counsel, on a contingent fee basis.  (App. Exs. 9, 10.)  Zoetics unequivocally informed the Bankruptcy Court that the enforcement of its intellectual property (including the Patents-In-Suit), using Niro Scavone, was central to its reorganization plan:

---

[2]     AT&T's claim is approximately four times that of the next 19 largest creditors <u>combined</u>.  (App. Ex. 4 (Amended Statement of 20 Largest Creditors).)

9.  The Debtor's Plan of Reorganization is based upon realizing value from its Intellectual Property.  The Debtor first focused its efforts on first [sic] seeking a license with certain significant parties which have infringed its intellectual property.  The Debtor next retained – after obtaining an order of this Court – the patent enforcement firm of Niro Scavone Heller & Niro to further attempt a negotiated resolution of the infringement.  After such efforts were rebuffed, the Debtor and the attorneys at Niro Scavone Heller & Niro made demand on certain significant parties to provide any justification for their use of the Debtor's intellectual property.

10.  The Debtor and the attorneys at Niro Scavone Heller & Niro have reviewed materials provided by the significant infringing parties purportedly justifying the infringement and have concluded that Debtor's intellectual property is valid and no basis exists to excuse the infringement.  The Debtor is working with the attorneys at Niro Scavone Heller & Niro to prepare its complaint against certain significant parties which will seek damages in an amount sufficient to satisfy all claims plus interest.

(App. Ex. 8.)

Thus, Zoetics intends to force its creditors, including AT&T, to accept a portion of the recovery, if any, of a contingent and risky litigation, controlled by Zoetics, while Zoetics keeps AT&T's patents, the right to keep any excess recovery above the amount of the claims, and the right to sue whomever it wants.  Should AT&T challenge this dubious maneuver, Zoetics' control of the lawsuit and ownership of the patents would be in serious doubt.  For example, AT&T may, *inter alia*, attempt to foreclose on the Patents-In-Suit or force a liquidation of Zoetics in the Bankruptcy Proceeding.  Whether Zoetics will emerge from bankruptcy owning the Patents-In-Suit seems doubtful.

- 6 -

C.    **Zoetics Sues Yahoo! on the Patents-In-Suit.**

Yahoo! was one of the alleged "significant infringing parties" alluded to in Zoetics' filings with the Bankruptcy Court.  (App. Ex. 8 at ¶ 10.)  In January 2004, Zoetics informed Yahoo! that Zoetics believed that Yahoo! infringed the '479 Patent and requested that it take a license.  (McFall Decl. ¶ 4.)  In August 2004, after an exchange of correspondence and at least one meeting, Yahoo! informed Zoetics that it was not interested in licensing the '479 Patent from Zoetics.  (McFall Decl. ¶ 5.)

In June 2005, through Niro Scavone, Zoetics renewed its efforts to induce Yahoo! to take a license, threatening litigation.  (McFall Decl. ¶ 6.)  Yahoo! again rebuffed these overtures in August 2005.  (McFall Decl. ¶ 7.)  Zoetics also sought pre-litigation discovery from Yahoo! via the Bankruptcy Proceeding and subsequently withdrew its requests.  (App. Ex. 11.)  In February 2006, after having known of Yahoo!'s allegedly infringing activity for at least two years, Plaintiffs filed this infringement action in the District of Delaware.

D.    **This Action Lacks Any Significant Relationship with Delaware.**

Other than the fact that ZoEmail and Yahoo! are organized under Delaware law, none of the parties, the Patents-In-Suit or the alleged infringement has any relationship to this forum.  Zoetics is a New York corporation with its principal place of business at 270 Lafayette Street, Suite 1202, New York, New York.  (Compl. ¶ 3.)  ZoEmail, a Delaware limited liability company, also maintains its principal place of business at 270 Lafayette Street, Suite 1202, New York, New York.  (Compl. ¶ 2.)  According to the assignment history for the Patents-In-Suit, however, ZoEmail is not an

owner of either of the patents and its participation in this action is unclear. (App. Ex. 2 (Patent Assignment Abstract).)

Yahoo!, a Delaware corporation, maintains its principal place of business at 701 First Avenue, Sunnyvale, California. (Compl. ¶ 5; McFall Decl. ¶ 3.) Yahoo! does not maintain any offices, facilities or personnel in this District. (McFall Decl. ¶ 3.) Moreover, neither the Patents-In-Suit nor the underlying technology, developed at AT&T's research facility in Florham Park, New Jersey, bear any relation to Delaware. Nor is the purported infringement alleged to have any particular connection to this forum.

## ARGUMENT

**I.    THE COURT SHOULD STAY THIS ACTION UNTIL THE NEW YORK BANKRUPTCY COURT RESOLVES THE OWNERSHIP OF THE PATENTS-IN-SUIT.**

The power of the Court to stay this proceeding is part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). *See also Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60-61 (3d Cir. 1985). The decision to stay rests in the sound discretion of the Court and in exercising that discretion the Court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. *See also Cost Bros.*, 760 F.2d at 60-61; *Hyland v. Harrison*, No. Civ. A. 05-162, 2006 WL 288247, at *7 (D. Del. Feb. 7, 2006) (Farnan, J.).

In determining whether to stay a particular action, the Court should consider (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery has been completed and a trial date has been set.

*See Commissariat à L'Énergie Atomique v. Dell Computer Corp.*, No. 03-484, 2004 WL 1554382, at *1 (D. Del. May 13, 2004); *Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253, 2003 WL 21640372, at *2 (D. Del. July 11, 2003). As demonstrated below, each of these factors strongly supports granting a stay in this action.

**A.    The Bankruptcy Proceeding Will Simplify the Issues and Resolve Plaintiffs' Standing To Maintain This Action.**

Courts in this District frequently stay actions pending the resolution of other actions or proceedings that might simplify or resolve issues before the Court. Thus, for example, cases have been stayed pending the reexamination of patents, *see, e.g., Alloc*, 2003 WL 21640372, at *2-3, *Pegasus Dev. Corp. v. DirectV, Inc.*, No. Civ. A. 00-1020, 2003 WL 21105073, at *2 (D. Del. May 14, 2003); pending the outcome of a Board of Trademark Appeals decision, *Microchip Tech., Inc. v. Motorola, Inc.*, No. 01-264, 2002 WL 32332753, at *3-4 (D. Del. May 28, 2002) (Farnan, J.); pending related litigation against other parties, *Commissariat à L'Énergie Atomique*, 2004 WL 1554382, at *2-3; and – as especially relevant here – pending the outcome of litigation to determine the ownership of asserted patents, *Summa Four, Inc. v. AT&T Wireless Servs., Inc.*, 994 F. Supp. 575, 580-85 (D. Del. 1998).

Although in a different procedural context, the analysis of this Court in *Summa Four*, is persuasive. In *Summa Four*, the Court considered whether a federal patent action should be stayed during the pendency of a state court litigation implicating ownership of the patents-in-suit. 994 F. Supp. at 580-85. While finding the *Colorado River* doctrine (relating to the stay or dismissal of a federal claim in the face of a parallel state court proceeding) technically inapplicable, the Court applied the *Colorado River* principles and its strict "exceptional circumstances" test in considering the stay of a

patent infringement action while ownership of the asserted patents was litigated in state court.  *Id.* at 580-83.  Even under that exacting standard, the Court determined that staying the infringement action pending resolution of ownership of the patents-in-suit would substantially advance judicial economy:

> By allowing this suit to be stayed while the state court holds trial on related matters, the Court will be substantially advancing judicial economy.  At best, the stay will save the parties from needless discovery and waste of time and expense. . . .; at worst, the Court will have delayed the inevitable for a relatively short period of time.

*Id.* at 585.

The judicial economies highlighted by this Court in *Summa Four* also counsel strongly in favor of a stay here.  Zoetics' ownership of the Patents-In-Suit is almost certain to be disputed before the Bankruptcy Court.  AT&T may, at any time, seek to reclaim the Patents-In-Suit.  Indeed, AT&T apparently sent a "Notice of Default" to Zoetics under the parties' Security Agreement prior to the Bankruptcy Proceeding, has filed a proof of claim secured by the Patents-In-Suit and, by operation of law, the Patents-In-Suit may already have reverted to AT&T.  (App. Ex. 2 (Tucciarone Aff. ¶ 3); App. Ex. 7.)  Although Zoetics will likely deny that the patents reverted to AT&T, were the action before this Court to proceed, Yahoo! would need to take discovery on this matter and would request that discovery take place in advance of other issues because it goes to the threshold issue of the Court's jurisdiction.  *See Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." (citation and internal quotations omitted)); *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993) (standing is "threshold

- 10 -

question").[3]   A stay while the ownership of the Patents-In-Suit is litigated in the Bankruptcy Proceeding would obviate the need for this Court to address it.

Alternatively, AT&T – which will (as the largest creditor) have a powerful say in the Bankruptcy Proceeding – may attempt to force Zoetics to sell the Patents-In-Suit at liquidation.  Zoetics may argue that even if the patents are sold to a new owner, part of the value of the sale would be its action against Yahoo!.  This argument would prove too much.  There is no reason to assume that a new owner would want to maintain this litigation against Yahoo! at all, that it would want to use Niro Scavone rather than its own counsel, or that it would not take an entirely different approach to licensing and enforcing the Patents-In-Suit altogether.

In short, any of a number of likely events in the Bankruptcy Proceeding could divest Zoetics of standing and leave the Patents-In-Suit with a new owner who may not have an interest in proceeding against Yahoo![4]   Therefore, staying this action pending the Bankruptcy Court's resolution of the ownership of the Patents-In-Suit would save the parties from potentially needless discovery and waste of time and expenses.  *See* *Landis*, 299 U.S. at 254-55; *Summa Four*, 994 F. Supp. at 580-85.

---

[3]    *Cf. Free-Flow Packaging Int'l, Inc. v. Pactiv Corp.*, No. 03-1157, slip op. at 5-6 (D. Del. Apr. 8, 2005) (Farnan, J.) (transferring patent infringement action to Southern District of Ohio where there was legitimate dispute over ownership of certain patents-in-suit and transfer would allow defendant to obtain relevant discovery) (App. Ex. 20).

[4]    AT&T, for example, has a business relationship with Yahoo!.  (McFall Decl. ¶ 8.) As a result of that relationship, some AT&T customers use the "Address Guard" feature accused of infringement in this action.  (*Id.*)  Thus, it is highly unlikely that this action would continue if the Patents-In-Suit were returned to AT&T.

**B.    A Stay Will Not Unduly Prejudice or Impose any
        Clear Tactical Disadvantage on Plaintiffs.**

Zoetics' bankruptcy plan is expected to be filed by June 30, 2006, with any litigation over that plan likely to occur shortly thereafter. (App. Ex. 6.) Whatever action AT&T or other creditors take with respect to the Patents-In-Suit will be addressed fully by the Bankruptcy Court. Neither of the Patents-In-Suit is at risk of expiring any time soon.[5]

Zoetics, for its part, has waited for more than two years from the time it first accused Yahoo! of infringement (January 2004) to the time it filed this action (February 2006). It cannot now complain that it will be prejudiced by a reasonable stay pending resolution of the ownership of the patents. Even if Zoetics is adjudicated to retain ownership of the Patents-In-Suit, a short additional delay in this action will not cause it any harm. *See, e.g.*, *Commissariat à L'Énergie Atomique*, 2004 WL 1554382, at *2 (staying patent infringement action where plaintiff did not articulate any real prejudice or tactical disadvantage it would suffer as a result of the stay).

**C.    A Stay is Particularly Appropriate Given That
        This Proceeding is At An Early Stage.**

The third relevant consideration, "whether discovery is complete and a trial date has been set," also strongly favors staying this action. The case before this Court is barely out of the starting block – no initial conference dates have been set, the parties have not met and conferred about discovery and no scheduling order has issued. Yahoo! has not yet responded to the Complaint. Indeed, whether Yahoo! answers the

---

[5]    The '479 Patent expires in October 2016 and the '574 Patent expires in June 2021. (Compl. Exs. A, B.)

Complaint or moves to dismiss the Complaint for lack of standing directly depends upon the resolution of the ownership of the Patents-In-Suit in the Bankruptcy Court. *See, e.g.*, *Alloc*, 2003 WL 21640372, at *3 (staying action pending patent reexamination where discovery had not yet begun, a discovery schedule had not yet been entered and the stay would potentially save parties from incurring "substantial litigation-related expenses").

In short, a stay here would achieve maximum efficiency – this action has so far involved minimal expense and investment, while the Bankruptcy Proceeding is well advanced and resolution of the ownership of the Patents-In-Suit as a part of that proceeding is imminent. Thus, for all of the reasons set forth above, Yahoo! submits that this action should be stayed pending resolution of the ownership of the Patents-In-Suit in the Bankruptcy Proceeding. *See Landis*, 299 U.S. at 254-55; *Alloc*, 2003 WL 21640372, at *3.

## II.    THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.

Whether or not the Court grants the stay, this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Section 1404(a), in relevant part, provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division in where it may have been brought." 28 U.S.C. § 1404(a). It is not disputed that Zoetics could have brought this action in the Southern District of New York. *See* 28 U.S.C. § 1391, § 1400. Accordingly, the Court must determine "whether this litigation would proceed more conveniently and whether the interests of justice would be better served by transfer to the Southern District of [New York]." *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 130-31 (D. Del. 1999) (Farnan, J.).

In determining whether to transfer venue under Section 1404(a), the Court should consider a number of different public and private factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions; (2) the availability and convenience of expected non-party witnesses; and (3) the location of books and records, to the extent that books and records could not be produced in a certain forum. *See id.*; *Nilssen v. Osram Sylvania, Inc.*, No. 00-695, 2001 WL 34368395, at *1 (D. Del. May 1, 2001) (Farnan, J.).[6]

These factors also include several public interests: (1) practical considerations regarding the ease, speed and expense of trial; (2) the enforceability of the judgment; (3) the administrative difficulty due to court congestion; (4) the local interest in deciding local controversies in the home forum; (5) the public policies of the two fora; and (6) the trial judge's familiarity with the applicable state law in diversity actions. *See Jumara*, 55 F.3d at 879-80; *Nilssen*, 2001 WL 34368395, at *1.

The moving party bears the burden of demonstrating that the balance of convenience and interests of justice weighs in favor of a transfer. *See Jumara*, 55 F.3d at 879; *SAS of P.R. v. P.R. Tel. Co.*, 833 F. Supp. 450, 452 (D. Del. 1993) (Farnan, J.). As

---

[6]     In *Jumara*, the Third Circuit also identified the following additional private interests: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; and (3) whether the claim arose elsewhere. 55 F.3d at 879. However, because they are subsumed by other *Jumara* factors, and to avoid the double-counting of certain factors, the courts have repeatedly found that these particular factors need not be independently addressed. *See, e.g.*, *Nilssen*, 2001 WL 34368395, at *1 n.3; *Memminger v. Infocure Corp.*, No. 00-707, 2000 U.S. Dist. LEXIS 22077, at *8-10 (D. Del. Nov. 14, 2000) (Farnan, J.).

demonstrated below, convenience and the interests of justice weigh strongly in favor of transferring this action to the Southern District of New York.

### A. Practical Considerations and Judicial Efficiency Strongly Favor Transferring this Action to the Southern District of New York.

There is substantial uncertainty over the ownership of the Patents-In-Suit. That uncertainty will be resolved in the Bankruptcy Court in the Southern District of New York and appealed to the District Court there if necessary. Moreover, to the extent that Zoetics is adjudicated to own the Patents-In-Suit, this action will be a central part of Zoetics' reorganization plan approved and administered by the New York Bankruptcy and District Courts. Thus, practical considerations and the interests of justice strongly favor transferring this action to New York.

In *Bank of America, N.A. (USA) v. US Airways, Inc.*, this Court recently transferred a case to a district in which defendant US Airways' Chapter 11 bankruptcy proceedings were pending. No. 05-793, 2005 WL 3525680, at *3 (D. Del. Dec. 21, 2005) (Farnan, J.). The Court found that the Bankruptcy Judge in that case was "in a far better position than this Court to expeditiously decide critical questions" pertaining to the litigation. *Id.* Here, as demonstrated above, the District Court for the Southern District of New York is better positioned to manage the case if and when it is appropriate to proceed.

Indeed, Yahoo! may require the permission of the Bankruptcy Court (in the Southern District of New York) to lift and/or modify the automatic litigation stay to, for example, bring counterclaims against Zoetics or file for reexamination of the Patents-In-Suit. *See* 11 U.S.C. § 362(a); *Kittay v. Landegger (In re Hegerstown Fibre Ltd. P'ship)*, 277 B.R. 181, 215 (Bankr. S.D.N.Y. 2002) ("The automatic stay, 11 U.S.C. §

- 15 -

362(a)(1), enjoins the commencement or continuation of lawsuits against the debtor, including counterclaims asserted against the debtor in a lawsuit initiated by the debtor." (citing *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994))).  Those decisions will be reviewed by the District Court for the Southern District of New York.  *See* 28 U.S.C. § 158(a); *In re Policy Realty Corp.*, 242 B.R. 121, 125-26 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000).

Moreover, in the event that the Bankruptcy Proceeding does not definitively resolve ownership of the patents, Yahoo! would still have a defense based on Plaintiffs' lack of standing.  It would be far more efficient to have the standing defense adjudicated, and the related discovery disputes decided, by the District Court for the Southern District of New York, which would have already heard any related appeals.  *Cf. Free-Flow Packaging Int'l, Inc. v. Pactiv Corp.*, Civ. No. 03-1157, slip op. at 5-6 (D. Del. Apr. 8, 2005) (Farnan, J.) (transferring patent infringement action where "there is a serious dispute over who owns the intellectual property" and transfer "would enable [defendant] to obtain potentially relevant discovery" from non-party alleged to own patents-in-suit) (App. Ex. 20).

Based on these substantial practical considerations, the Court should, in the interest of justice, transfer this action to the Southern District of New York.  *See Bank of Am.*, 2005 WL 3525680, at *3 (finding that "for practical considerations alone, it is in the interest of justice to transfer this case to the Eastern District of Virginia" where related bankruptcy proceedings were pending); *Bayer Bioscience, N.V. v. Monsanto Co.*, No. 03-023, 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003) (transferring patent infringement action to Eastern District of Missouri "given the on-going relationship that

the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents"); *Invitrogen Corp. v. Stratagene Holding Corp.*, No. 00-620, slip op. at 5 (D. Del. Apr. 11, 2001) (Farnan, J.) (transferring patent infringement action to District of Maryland where related litigations were pending and transfer would "promote judicial economy and make litigation less expensive and less burdensome for the parties and the witnesses") (App. Ex. 21).[7]

> ### B. Other Private and Public Factors Also Strongly Favor Transferring this Action to the Southern District of New York.

Even if the Court does not find that the substantial practical considerations discussed above in and of themselves require that this action be transferred to the Southern District of New York, evaluation of the other relevant private and public factors confirms that a transfer is warranted.

> ### 1. Availability and convenience of critical non-party witnesses.

The availability and convenience of non-party witnesses is the most important factor in the venue transfer analysis. *See Nilssen*, 2001 WL 34368395, at *2; *Memminger v. Infocure Corp.*, No. 00-707, 2000 U.S. Dist. LEXIS 22077, at *12-13 (D. Del. Nov. 14, 2000) (Farnan, J.).[8]  Moreover, "the availability of 'fact witnesses who

---

[7]  These same facts show a strong interest in New York for handling a dispute tied to a bankruptcy pending in its courts and a debtor based in that state. *See Jumara*, 55 F.3d at 879.

[8]  The convenience of party witnesses normally does not carry any weight in the "convenience of witnesses" element because the parties are obligated to procure their attendance at trial. *See, e.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).  However, Zoetics currently is going through bankruptcy in the Southern District of New York and the burden of this
(Continued . . . )

possess first-hand knowledge of the events giving rise to the lawsuit' are the most important type of witnesses for purposes of venue transfer analysis." *Memminger*, 2000 U.S. Dist. LEXIS 22077, at *13 (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998)). Where a non-party witness may be available to testify in the proposed forum, but not the present forum, this factor weighs strongly in favor of transferring the action. *See Nilssen*, 2001 WL 34368395, at *2; *Memminger*, 2000 U.S. Dist. LEXIS 22077, at *14.

Significantly, "[a] party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." *Nilssen*, 2001 WL 34368395, at *2 (citing *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F. Supp 2d 505, 510 (D. Del. 1999)). *See also Affymetrix*, 28 F. Supp. 2d at 205 ("[T]he mere assurance that [expected witnesses] will appear at trial is not the same thing as having them amenable to the subpoena power of the trial court." (internal quotations omitted)). "It is desirable to hold trial at a place where the personal attendance of witnesses through use of the subpoena power can be reasonably assured." *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986).

Here, the named inventor on each of the Patents-In-Suit is Robert J. Hall, a nonparty to this action. (Compl. Exs. A, B.) Mr. Hall obtained the patents in the course

---

(. . . continued.)

litigation may fall on Zoetics' creditors (including AT&T, who because of Zoetics' default, is already unwillingly underwriting this action). Thus, the fact that Plaintiffs are located blocks from the District Court for the Southern District of New York and would reduce their costs by litigating there would seem to favor transferring the action.

of his employment at AT&T's research facility in Florham Park, New Jersey, and resides in Berkeley Heights, New Jersey.  (Compl. Exhs. A, B; App. Ex. 1 (Robert Hall Profile).)  As the named inventor on the patents, Mr. Hall's testimony is obviously central to this infringement action.  Mr. Hall, for example, possesses significant information relating to the technology described in the Patents-In-Suit, the relevant prior art and the prosecution history of the patents.  This information is directly relevant to, *inter alia*, claim construction and numerous of Yahoo!'s potential defenses in this action including, for example, the validity and enforceability of the Patents-In-Suit.

It appears that Florham Park, New Jersey, and Berkeley Heights, New Jersey, may be – *just* – within 100 miles of Wilmington, Delaware using a straight-line "as the crow flies" measurement (to/from city center).  (App. Ex. 12.)  However, commonly-used travel websites suggest that Mr. Hall would be required to travel *more than 100 miles* to the Court from Florham Park (about 130 miles) and from Berkeley Heights (about 110 miles).  (App. Exs. 13, 14.)  On the other hand, Mr. Hall is easily within the subpoena power of the District Court for the Southern District of New York both "as the crow flies" (App. Ex. 12) and under any ordinary and usual travel route – approximately 29 miles from Florham Park and 27 miles from Berkeley Heights (App. Exs. 15, 16).  In order to avoid any dispute over the matter, including any objection by Mr. Hall, and to ensure that Yahoo! will be able to subpoena this critical non-party witness at trial, this action should be transferred to the Southern District of New York. *See Affymetrix*, 28 F. Supp. 2d at 204-05 (fact that named inventors on patents-in-suit were outside subpoena power of Delaware court and within subpoena power of transferee court "weigh[ed] heavily in favor of transfer"); *3COM Corp. v. D-Link Sys., Inc.*, Civ.

No. 03-014, 2003 WL 1966438, at *2 (D. Del. Apr. 25, 2003) (transferring patent infringement action where at least one of the inventors of the accused products was outside the subpoena power of Delaware court and within the subpoena power of the transferee court).[9]

Likewise, other nonparty employees at the AT&T Florham Park research facility during the time that Mr. Hall was developing the purported inventions that led to the Patents-In-Suit would likely have information directly relevant to the technology and inventions described in the Patents-In-Suit. Such employees would have been witnesses for the development of the invention and have relevant information relating to the technology and/or prior art. At this stage in the litigation, Yahoo! has not been able to specifically identify each of these potential witnesses. However, based on their employment and/or association with the research facility in Florham Park, New Jersey, it is possible that some or all of these witnesses are outside the subpoena power of this Court (given the approximately 130 mile travel route). (App. Ex. 13.) They are, however, almost certainly within the subpoena power of the District Court for the Southern District of New York (approximately 29 miles). (App. Ex. 15.)

---

[9]    It is not settled whether the 100-mile distance provided for under Rule 45 is to be measured using the ordinary and usual route of travel or a straight-line "as the crow flies" method. *Compare Hill v. Equitable Bank, Nat'l Ass'n*, 115 F.R.D. 184, 186 (D. Del. 1987) (applying "straight line" method) *with Merchant Bank of N.Y. v. Grove Silk Co.*, 11 F.R.D. 439, 440 (M.D. Pa. 1951) (applying "usual and shortest route of public travel") and *Green v. Victor Talking Mach. Co.*, 15 F.2d 869, 870 (E.D.N.Y. 1926) (applying "ordinary, usual and shortest route of public travel"). *See also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2461 (2005) (noting disagreement with respect to measurement of 100-mile distance).

Again, in order to avoid later disputes and to ensure that Yahoo! will be able properly to defend itself in this infringement action by subpoenaing crucial witnesses at trial, the Court should transfer the action to the Southern District of New York.  *See Affymetrix*, 28 F. Supp. 2d at 204 (that potential fact and expert witnesses employed at Stanford at the time the patented technology was developed were outside subpoena power of Delaware court and within subpoena power of transferee court "weigh[ed] heavily in favor of transfer"); *Mentor Graphics*, 77 F. Supp. 2d at 510 (that non-party witnesses "intimately involved with the development of the accused . . . products" and expected to be critically important to invalidity and infringement issues were outside the subpoena power of Delaware court and within subpoena power of transferee court "weigh[ed] heavily in favor of transfer").  Even if any of these critical non-party witnesses were within the Court's subpoena power, there is no question that they are substantially closer to the Southern District of New York and that a transfer would save all of these witnesses significant travel time and expense.

Lastly, two of the attorneys involved in prosecuting the Patents-In-Suit are plainly within the subpoena power of the District Court for the Southern District of New York, but not within the subpoena power of this Court.[10]  These prosecuting attorneys would have information directly relevant to this action including, but not limited to, claim construction and the validity and enforceability of the Patents-In-Suit.  *See, e.g.*, *3COM*,

---

[10]    The prosecuting attorneys are Samuel Dworetsky (Monsey, New York) and Michael Murray (New York City).  The addresses, travel distances to this Court and the Southern District of New York, and excerpts from the prosecution histories evidencing the involvement of Messrs. Dworetsky and Murray in prosecuting the Patents-In-Suit are set forth in Appendix Exhibits 17 and 18, respectively.

2003 WL 1966438, at *2 (transferring patent infringement action where one of prosecuting attorneys was outside subpoena power of Delaware court and within subpoena power of transferee court); *Memminger*, 2000 U.S. Dist. LEXIS 22077, at *14 ("[L]ocation in Georgia of three non-party fact witnesses . . . weighs strongly in favor of transfer [to Northern District of Georgia]").  Thus, the availability and convenience of non-party witnesses – one of the most important factors in the transfer analysis – weighs strongly in favor of transferring the action to the Southern District of New York.  *See Nilssen*, 2001 WL 34368395, at *2-3.

### 2.    Convenience of the parties.

The convenience of the parties also weighs in favor of transferring this action to the Southern District of New York.  Neither Zoetics, ZoEmail nor Yahoo! maintains any offices, facilities or personnel in Delaware.  (Compl. ¶¶ 2, 3, 5; McFall Decl. ¶ 3.)  *See, e.g.*, *3COM*, 2003 WL 1966438, at *1 (transferring patent infringement action where neither party maintained or owned any facility, property or personnel in Delaware); *Bayer Bioscience*, 2003 WL 1565864, at *2 (transferring patent infringement action where neither party maintained operations in Delaware).  In fact, both Zoetics and ZoEmail maintain their principal place of business a short walk from the District Court for the Southern District of New York.  *See Continental Cas.*, 61 F. Supp. 2d at 131 (transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen to litigate on its "home turf" or forum where alleged wrongful conduct occurred).

That Yahoo! is incorporated in Delaware and ZoEmail – who has no apparent connection to this action – is a Delaware limited liability company does not preclude a transfer of the action.  *See APV N. Am., Inc. v. SIG Simonazzi N. Am., Inc.*,

295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (Farnan, J.) (transferring patent infringement action where neither plaintiff nor defendant conducted business or had facilities in Delaware despite the fact that they both were Delaware corporations); *At Home Corp. v. Cox Commc'ns, Inc.*, No. 02-1486, 2003 WL 22350925, at *2 (D. Del. Oct. 8, 2003) (Farnan, J.) (transferring case where defendants did not have significant relation to Delaware despite fact that defendant was organized under Delaware law).[11]

        Moreover, Plaintiffs do not – and cannot – allege that the Patents-In-Suit, which were developed in Florham Park, New Jersey, have any connection to Delaware. Nor does the accused technology or the alleged infringement of the Patents-In-Suit bear any particular connection to this forum. *See APV N. Am.*, 295 F. Supp. 2d at 398-99 (finding that plaintiff's choice of Delaware forum should be given "less deference" where patents-in-suit and accused product did not have significant connection to Delaware); *Brunswick Corp. v. Precor, Inc.*, Civ. No. 00-691, 2000 WL 1876477, at *2 (D. Del. Dec. 12, 2000) ("[T]he plaintiff's preference for Delaware is not given as much deference because . . . the design and manufacture of the [allegedly infringing] exercise equipment, occurred outside of Delaware.").

---

[11]    *See also Invitrogen*, No. 00-620, slip op. at 4-6 (transferring patent infringement action to Maryland where plaintiff maintained its principal place of business notwithstanding plaintiff's incorporation under Delaware law) (App. Ex. 21); *Brunswick Corp. v. Precor Inc.*, No. 00-691, 2000 WL 1876477, at *2 (D. Del. Dec. 12, 2000) (transferring patent infringement action where "[a]lthough both parties are incorporated in Delaware . . . . [n]either of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware"). While there is no dispute that venue is permissible in Delaware, that fact is significantly outweighed by the powerful connections between this action and the Southern District of New York.

Although neither Delaware nor the Southern District of New York is significantly more convenient than the other for Yahoo!, litigation in the Southern District of New York would not require the parties' continued retention of Delaware local counsel. *See* D. Del. L. R. 83.5 (1995); *Affymetrix*, 28 F. Supp. 2d at 205-06. For Zoetics, in bankruptcy, this is a non-trivial expense; continued litigation in Delaware would require it to pay additional counsel when it already cannot pay for the Patents-In-Suit. Indeed, how Zoetics plans to pay local counsel is a mystery, since a review of the docket for the Bankruptcy Proceeding shows no evidence that the retention of Delaware local counsel has been approved by the Bankruptcy Court. (App. Ex. 19.)

For these reasons, Plaintiffs' choice of forum should be accorded little deference. Plaintiffs' choice is contrary to the convenience of the witnesses, Plaintiffs' ability to pay their creditors, and the practical overlap of this case with the Bankruptcy Proceeding in New York. Because neither the parties nor this action bear any significant connection to Delaware, and Plaintiffs' choice of forum contradicts even their own interests, the "convenience of the parties" favors transferring this action. *See Continental Cas.*, 61 F. Supp. 2d at 130.

### 3.    Local interest in the controversy.

Although the courts generally do not find any particular "local interest" in resolving patent infringement actions, *see, e.g.*, *Affymetrix*, 28 F. Supp. 2d at 208, here the local interest in the controversy weighs – at least somewhat – in favor of a transfer to the Southern District of New York. According to Zoetics, the Patents-In-Suit are its most valuable asset and are at the very crux of its plan to pay off creditors and re-emerge from bankruptcy. (*See generally* App. Ex. 8 at ¶¶ 8-11.) Given that the Patents-In-Suit are central to the reorganization of a New York corporation, headquartered in New York, and

- 24 -

in the midst of a bankruptcy proceeding in New York (implicating the rights of creditors also before the New York court), the local interest in the controversy weighs in favor of transferring the action to the Southern District of New York. *See, e.g.*, *Invitrogen*, No. 00-620, slip op. at 5 (finding "considerably more local interest" in resolving patent infringement action in Maryland where plaintiff operates its business and given that none of parties maintain principal place of business in Delaware) (App. Ex. 21).[12]

---

[12]    The *Jumara* factors not specifically addressed herein do not appear to weigh heavily for or against transfer (public policies of fora) or are inapposite (enforceability of judgment, court's familiarity with state law).

<u>CONCLUSION</u>

For all of the foregoing reasons, Yahoo! respectfully requests that the Court (i) stay this action, including the response to the Complaint, further pleadings and discovery, until resolution of the ownership of the Patents-In-Suit in the Bankruptcy Court, and (ii) transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York, and grant whatever other and further relief it deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____

Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendant Yahoo!, Inc.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
415.268.7000

Matthew M. D'Amore
Kyle W.K. Mooney
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
212.468.8000

Dated:  April 21, 2006
516941

- 26 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Josy W. Ingersoll, Esquire
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on April 21, 2006 upon the following individuals in the manner indicated:

| **BY HAND** | **BY FEDERAL EXPRESS** |
|---|---|
| Josy W. Ingersoll, Esquire | Paul K. Vickrey, Esquire |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | NIRO, SCAVONE, HALLER & NIRO |
| The Brandywine Building | 181 W. Madison St., Suite 4600 |
| 1000 West Street, 17th Floor | Chicago, IL  60602 |
| Wilmington, DE  19801 | |

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)