IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZOETICS, INC., and ZOEMAIL, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-108-JJF |
| | ) | |
| YAHOO!, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
## TO YAHOO!'S MOTION TO STAY AND TRANSFER

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (# 1088)
Karen L. Pascale (# 2903)
Elena C. Norman (# 4780)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

*Attorneys for Plaintiffs Zoetics, Inc.
and ZoEmail, LLC*

OF COUNSEL:

Paul K. Vickrey
Douglas M. Hall
Frederick C. Laney
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street
Suite 4600
Chicago, IL 60602
(312) 236-0733

May 12, 2006

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS..................................................................................2

       A.     The Chronology of Zoetics' Negotiations With Yahoo!............................2

       B.     Relevant Events In The Bankruptcy Case................................................3

       C.     Yahoo! and AT&T Are Business Partners..................................................5

III.   YAHOO!'S REQUEST FOR A STAY IS BASED ON SPECULATION
       AND MUST BE DENIED....................................................................................6

       A.     Yahoo! Has No Facts to Support Its Position That
              the Bankruptcy Proceeding Will Simplify Issues ........................................7

       B.     Yahoo! Ignores the Obvious Prejudice a Stay Would Have on Zoetics ......9

       C.     The Early Stage of This Action Does Not Support
              Yahoo!'s Motion for a Stay ....................................................................10

IV.    YAHOO! HAS NOT MET ITS BURDEN OF CLEARLY SHOWING
       THAT A TRANSFER OF VENUE IS APPROPRIATE......................................10

       A.     The Standard  ........................................................................................11

       B.     The Plaintiff's Choice of Forum Is Due Considerable Deference .............12

       C.     "Convenience of the Witnesses" Weighs in Favor if Delaware ...............14

       D.     "Convenience of the Parties" Weighs in Favor of Delaware.....................17

       E.     Yahoo! Has Made No Proper Showing That the
              Interests of Justice Favor the Southern District of New York ..................19

              1.     The Bankruptcy Action in New York Does Not Contain a
                    Substantial Overlap of Issues With This Patent Infringement
                    Action............................................................................................19

              2.     The Most Practical Public Consideration Is
                    the Swift Resolution of This Case .................................................20

V.     CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

Bank of America, N.A. (USA) v. US Airways, Inc.,
C.A. No. 05-73-JJF, 2005 U.S. Dist. LEXIS 34902 (D. Del. 2005)...................................19

Bayer Bioscience, N.V. v. Monsanto Co.,
C.A. No. 03-023-GMS, 2003 WL 1565864 (D. Del. Mar. 25, 2003)...............................20

Continental Cas. Co. v. American Home Assurance Co.,
61 F. Supp. 2d 128 (D. Del. 1999)...................................................................................12

Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,
821 F. Supp. 962 (D. Del. 1993)..............................................................................13, 18

Datastrip (IOM) Ltd. v. Symbol Technologies, Inc.,
C.A No 97-70-JJF (D. Del. Nov. 25, 1998).......................................................13, 17, 18

Free-Flow Packaging Int'l, Inc. v. Pactiv Corp.,
C.A. No. 03-1157-JJF, slip op. (D. Del. Apr. 8, 2005).....................................................20

Hill v. Equitable Bank, Nat'l Ass'n,
115 F.R.D. 184 (D. Del. 1987) ........................................................................................14

Insituform Technologies, Inc. v. Cat Contracting, Inc.,
99 F.3d 1098 (Fed. Cir. 1996)..........................................................................................15

Invitrogen Corp. v. Stratagene Holding Corp.,
C.A. No. 00-620-JJF (D. Del. Apr. 11, 2001)...................................................................20

Joint Stock Society v. Heublein, Inc.,
936 F. Supp. 177 (D. Del. 1996)......................................................................................13

Jones Pharma, Inc. v. KV Pharmaceutical Co.,
C.A. No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333 (D. Del. Feb. 17, 2004) .............12, 19

Stratos Lightwave, Inc. v. E20 Communications, Inc.,
C.A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002) ........... *passim*

Streamfeeder, LLC v. Sure-Feed Systems, Inc.,
175 F.3d 974 (Fed. Cir. 1999)..........................................................................................15

Summa Four, Inc. v. AT&T Wireless Servs., Inc.,
994 F. Supp. 575 (D. Del. 1998)...........................................................................................8

Trilegiant Loyalty Solutions v. Maritz, Inc.,
C.A. No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825 (D. Del. Feb. 15, 2005)..............16, 17

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996).....................................................................................15, 16

## I.    **INTRODUCTION**

The motion of Yahoo! Inc. ("Yahoo!") (D.I. 10) is deficient in several respects, most notably in the facts which it omits.  While the centerpiece of Yahoo!'s motion is a "putative ownership dispute", nobody, including AT&T, has ever contested Zoetics' ownership of the patents-in-suit.  Also absent from Yahoo!'s motion is the fact that Bankruptcy Judge Blackshear held that granting Zoetics' request to retain patent counsel to enforce its intellectual property rights "is in the best interest of the Debtor and its estate and creditors and is authorized by Section 327(e) of Title 11 of the United States Code...." (Yahoo! Appendix, Ex. 10) (D.I. 13).  AT&T made no objection to that ruling. Indeed, to date, only Yahoo! has raised any question about Zoetics' standing to enforce the patents-in-suit.  Ironically, while Yahoo! can make such an argument in this Court, it cannot do so in the bankruptcy case because it is not a creditor and has no standing.

Finally, the notion that this action is premature is belied by (1) Yahoo!'s efforts to protract Zoetics' good faith (but naive) attempts to negotiate a license, and (2) when that failed, Yahoo!'s refusal to provide any of the discovery which Zoetics sought in the bankruptcy case.  Clearly, what is really going on is that Yahoo! wants more time to work with its business "partner", AT&T, to figure out ways to thwart Zoetics' enforcement of its patent rights.

Turning to the motion to transfer, Yahoo! vociferously argues that it will not have access to "critical non-party witnesses".  That argument does not withstand scrutiny: Yahoo concedes that Mr. Hall and the other (unnamed) AT&T employees are within 100 miles of this Court on a direct line basis -- which is the appropriate measurement of the distance under the caselaw.  In any event, Yahoo! and AT&T are business partners (to

1

quote Yahoo!'s declarant, the companies have entered into a "business alliance"), and are no doubt coordinating with each other on a defense against Zoetics claims. Yahoo!'s suggestion to this Court that it will be unable to obtain the cooperation of AT&T employees is unfortunate, at best.

Plaintiff ZoEmail (Zoetics' licensee) is a Delaware limited liability company, and Yahoo! is a Delaware corporation. Plaintiffs have selected Delaware as the forum in which to enforce their patent rights. On these facts, Yahoo! cannot meet its burden "to establish that the balance of the interests strongly weigh in favor of a transfer...." <u>Stratos Lightwave, Inc. v. E20 Communications, Inc.</u>, C.A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 at *5 (D. Del. Mar. 26, 2002).

Both motions should be denied.

## II.    STATEMENT OF FACTS

### A.    The Chronology of Zoetics' Negotiations With Yahoo!

In January of 2004, Zoetics approached Yahoo! to discuss license of its '479 patent. (Declaration of Joel Tucciarone, App. Ex. A at ¶ 2).[1] That led to an April 30, 2004 meeting between Zoetics, Yahoo! and Yahoo!'s outside counsel. At that meeting, Yahoo!'s outside counsel reported that they "needed two months to review the patent field." (<u>Id</u>. at ¶ 3). After nearly four months passed without word from Yahoo!, Zoetics contacted Yahoo! again; thereafter on August 25, 2004, Yahoo! sent Zoetics a letter stating "Yahoo! has concluded that it does not require a license under this patent." (<u>Id</u>. at ¶ 4).

---

[1]    Citations to the Appendix of Exhibits submitted herewith are in the form "App. Ex. ___."

On June 14, 2005, after its retention as special intellectual property counsel for Zoetics, the firm of Niro, Scavone, Haller & Niro sent Yahoo! a letter seeking "one last opportunity to engage in a meaningful license negotiation." (App. Ex. B).   Thereafter, on July 6, 2005, Yahoo!'s counsel, Lisa McFall, called Zoetics' counsel and left a message stating "I... hope to have some information to you in the next few weeks." (App. Ex. C). Over five weeks later, on August 16, 2005, Ms. McFall sent Zoetics' counsel a letter identifying three prior art references which purportedly "cover" the accused feature. (App. Ex. D).

Thereafter, the parties scheduled a settlement conference, which ultimately occurred on January 27, 2006, shortly after the issuance of the second patent-in-suit. During that conference, Yahoo! made no allegation that Zoetics did not own the patents-in-suit; nor did Yahoo! discuss any prior art.   (App. Ex. A at ¶ 6).   Zoetics made a settlement demand to which Yahoo! counsel said that Yahoo! would likely respond within a week.   (Id. at ¶ 6).   When that didn't happen, on February 9, 2006, Zoetics' counsel wrote Yahoo!'s counsel; Yahoo!'s counsel responded that it would not make a counter offer. (App. Ex. E).   Zoetics filed suit on February 21, 2006.

In summary, feigned engagement and delay has marked the history of discussions between Zoetics and Yahoo!  Yahoo! now seeks a further delay.

## B.    Relevant Events in the Bankruptcy Case

On October 20, 2004, Zoetics filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Declaration of B. Lane Hasler, App. Ex. F at ¶2).   On February 25, 2005, Zoetics filed an Application for Order authoring the retention of Niro, Scavone, Haller & Niro as special intellectual property counsel in order to enforce Zoetics' patent

rights. (Id. at ¶3). AT&T filed no objection to that application; in fact, AT&T has *never* filed any pleading in the bankruptcy case alleging that Zoetics does not own the patents-in-suit or lacks standing to enforce them. (Id. at ¶4). In fact, even outside of formal pleadings, during the numerous discussions between counsel for Zoetics and AT&T, AT&T has never made such a claim. (Id. at ¶5).

On March 15, 2005, Judge Blackshear held that granting Zoetics' request to retain patent counsel to enforce its intellectual property rights "is in the best interest of the Debtor and its estate and creditors and is authorized by Section 327(e) of Title 11 of the United States Code...." (Yahoo! Appendix, Ex. 10). That Order also granted Zoetics the ability to file this lawsuit against Yahoo!. AT&T made no objection to that request or the Court's Order.

On July 28, 2005, Zoetics served Yahoo! with a subpoena to produce documents under Rule 2004 of the Federal Rules of Bankruptcy procedure. (App. Ex. F at ¶7). After Yahoo! failed to respond, on November 29, 2005 the Bankruptcy Court entered an Order compelling Yahoo! to produce documents and awarding sanctions. (Id. at ¶8). On February 17, 2006, Yahoo! filed a motion to vacate such order, specifically arguing that it did not have to produce documents in the bankruptcy case "given the imminence of [Zoetics'] infringement claim." (Id. at ¶8). After Zoetics filed this lawsuit, Zoetics agreed that the November 29, 2005 Order could be vacated. (Id. at ¶8).

On April 11, 2006, AT&T filed a Proof of Claim stating that it is a "secured creditor" of Zoetics. (Id. at ¶9). While Yahoo! undoubtedly engineered that filing, a proof of claim does not translate into an ownership dispute. And, simple math reveals that AT&T is not even a secured creditor: AT&T filed its UCC-1 Financing Statement on

July 26, 2005, a date within 90 days of the October 20, 2005 bankruptcy filing. (Id. at ¶10). Clearly, Yahoo! is playing each Court against the other to further its goal of delay and to avoid a determination of its infringement.

### C.    Yahoo! and AT&T Are Business Partners

Yahoo!'s suggestion that it will be unable to obtain the cooperation of AT&T witnesses is belied by the fact that Yahoo! and AT&T are business partners. In her Declaration, Yahoo!'s Ms. McFall states:

> Yahoo! and AT&T presently have a business alliance to provide broadband internet services. Upon information and belief, at least some of the subscribers to the AT&T/Yahoo! broadband internet services use the "Address Guard" feature accused of infringement by Zoetics in this action.

(McFall Declaration at ¶8). Neither Ms. McFall's Declaration (D.I. 12) nor Yahoo!'s brief (D.I. 11) explains what that "business alliance" is. In actuality, Yahoo! and AT&T enjoy an extensive and lucrative partnership. As they jointly announced on April 26, 2006:

> AT&T Inc., the nation's leading DSL high-speed Internet and consumer voice services company and Yahoo!® Inc., the No. 1 global Internet destination, announce their new, integrated Internet-based voice communications services. Starting today, the companies will offer a co-branded version of Yahoo! Messenger with Voice to AT&T Yahoo! High Speed Internet subscribers and all Yahoo! users in AT&T's traditional 13-state local service area. Yahoo! also today launched, out of beta, the newest version of Yahoo! Messenger with Voice to consumers worldwide. As part of this expanded relationship, AT&T companies will be Yahoo!'s preferred network termination providers for the PC-based calling services in Yahoo! Messenger with Voice service globally.
>
> *    *    *
>
> AT&T Inc. and Yahoo! announced their strategic alliance in November 2001 and launched co-branded high speed Internet and Dial services less than a year later. The companies announced in late 2004 a multi-year extension of their industry-leading alliance with the intent to bring the AT&T Yahoo! customers experience beyond the PC, such as to home

television and audio systems, Cingular Wireless handsets, AT&T Wi-Fi and AT&T Home Networking equipment. Today, the alliance stands as one of the most successful in the industry, based on subscriber growth and the strength of its award-winning features.

(App. Ex. G).

### III.   YAHOO!'S REQUEST FOR A STAY IS BASED ON SPECULATION AND MUST BE DENIED

Yahoo!'s motion for a stay must be denied because it is based on speculation about the steps a third party purportedly may take, but has not taken. Specifically, Yahoo! asserts that AT&T could and/or may dispute the ownership of the patents-in-suit. Yahoo! however, cannot dispute the following facts: (1) as of the date of its motion and throughout the substantial time Zoetics has been in bankruptcy, AT&T has never once challenged Zoetics' ownership of the patents; (2) there has never been any communication from AT&T to Zoetics regarding any purported intention of AT&T to reclaim the patents-in-suit or force their sale in the bankruptcy case, even if such relief was even available (and it is not); (3) AT&T failed to perfect its security interest more than 90 days before Zoetics filed for bankruptcy; (4) AT&T never objected to Zoetics' motion to retain counsel and to file suit to protect the patent rights of Zoetics against third party infringers (i.e., Yahoo!); and (5) Bankruptcy Judge Blackshear held that granting Zoetics' request to retain patent counsel to enforce its intellectual property rights "is in the best interest of the Debtor and its estate and creditors, and is authorized by Section 327(e) of Title 11 of the United States Code . . . ." (Yahoo! Appendix, Ex. 10).

Contrary to Yahoo!'s speculation about Zoetics' rights in the patents-in-suit, Yahoo!'s own motion provides concrete evidence that Zoetics is the rightful owner of the patents-in-suit. (See Yahoo!'s Appendix, Ex. 2). Moreover, Yahoo! has not pointed to

any factual support that a dispute of Zoetics' ownership actually exists. Again, as of this response, AT&T has never once challenged Zoetics' ownership of the patents-in-suit.

Yahoo! tries to penalize Zoetics because Zoetics has been actively trying to negotiate a license with Yahoo! to avoid litigation and to be able to make its creditors whole. During that time Zoetics provided Yahoo! with claim charts and correspondence regarding Yahoo!'s validity challenges. Zoetics and Yahoo! also had two meetings to discuss this dispute. During those settlement talks, Yahoo! never once challenged Zoetics' patent ownership rights. And when Zoetics tried to obtain discovery regarding Yahoo!'s infringing activities through the bankruptcy court, Yahoo! refused. Once it became clear that Yahoo! was unwilling to respect Zoetics' patent rights and that it intended to block Zoetics' efforts to discover information through the bankruptcy court, Zoetics filed this lawsuit.

Yahoo! should not be allowed to stall this action to gain a tactical advantage. In short, Yahoo! has not presented any facts that support its speculation regarding an ownership dispute; nor has Yahoo! presented any evidence that this action to enforce Zoetics' intellectual property rights is in any way inconsistent with the bankruptcy proceedings.

**A.    Yahoo! Has No Facts to Support Its Position That the Bankruptcy Proceeding Will Simplify Issues**

Yahoo!'s motion for stay rests entirely upon speculation. For example, Yahoo! relies on speculation when it states: "Zoetics' ownership of the Patents-In-Suit is ***almost certain*** to be disputed before the Bankruptcy Court. AT&T ***may, at any time,*** seek to reclaim the Patents-In-Suit" and "AT&T . . . ***may attempt*** to force Zoetics to sell the

Patents-In-Suit at liquidation". (Yahoo!'s Brf., at 10-11) (emphasis supplied). Conversely, as a matter of fact, there is no present dispute over Zoetics' ownership of the patents-in-suit. In fact, the bankruptcy case began over eighteen months ago and AT&T has never filed a single document in which it claims ownership of the patents. Moreover, when Zoetics sought the Court's approval to pursue this and other actions to enforce Zoetics' intellectual property, AT&T sat silent and made no objection. Finally, AT&T may be the "largest creditor", but AT&T attempted to perfect its security interest less than 90 days before Zoetics filed for bankruptcy and thus is not even a secured creditor.

Yahoo! cites this Court's <u>Summa Four, Inc. v. AT&T Wireless Servs., Inc.</u>, 994 F. Supp. 575 (D. Del. 1998), opinion as its primary authority for staying this action. There, however, at the time the motion for a stay was filed the same parties had already been litigating over the ownership of the claimed technology. <u>Id.</u> at 578. The Court noted that "[a] large amount of discovery [regarding the issue of ownership] ha[d] already taken place" and that the state court action was scheduled to start a trial on the ownership issue in less than three months. <u>Id.</u> at 578, 584 (the opinion issued on February 13, 1998 and trial was scheduled to begin May 5, 1998). In this case, there is no present dispute over the ownership of the patents-in-suit.

Yahoo! does not point to any other issues that can possibly be simplified by the bankruptcy proceedings. Clearly, the Bankruptcy Court cannot decide issues of claim interpretation, infringement, validity and damages. According to Yahoo!, the only potential simplification that is even possible is regarding an issue that has not ever arisen. The inquiry, therefore, could end here because the facts of this case cannot satisfy the "exacting standard" necessary to justify a stay.

**B.    Yahoo! Ignores the Obvious Prejudice a
        Stay Would Have on Zoetics**

Two facts are undisputed: (1) Zoetics is in bankruptcy; and (2) Zoetics' principal asset is its intellectual property rights in the patents that were purchased from AT&T. Zoetics believes that one of the primary reasons it is in bankruptcy is because Yahoo! deliberately appropriated its technology and Zoetics' competitive advantage—a successful means for combating spam. Although Zoetics believes that others are also practicing its patented technology, Yahoo! has caused the greatest harm. Staying this litigation prevents Zoetics from getting a just and speedy resolution to its complaint.

Moreover, as Bankruptcy Judge Blackshear held, granting Zoetics' request to retain patent counsel to enforce its intellectual property rights "is in the best interest of the Debtor and its estate and creditors, and is authorized by Section 327(e) of Title 11 of the United States Code . . . ." (Yahoo! Appendix, Ex. 10). The Bankruptcy Court, therefore, acknowledged that Zoetics must be able to enforce its patented technology to recover damages from its competitors' infringement and to give Zoetics the competitive advantage necessary to allow for the attraction of additional investors to help build a profitable company.

Incredibly, Yahoo! also argues that Zoetics cannot complain that it will be prejudiced in light of the fact that Zoetics made repeated efforts to avoid litigation by trying to reach a business resolution with Yahoo! over the past two years. (See Yahoo! Brf., at 12). Zoetics is a company with limited resources that tried to take all reasonable measures to avoid the costs and expenses of a complex patent litigation; especially against a company with the resources of Yahoo!. Furthermore, the second patent-in-suit did not even issue until January 6, 2006, so Zoetics cannot be accused of sitting on its

hands. To the contrary, it waited to file suit until it attempted to resolve the matter and avoided piecemeal litigation by waiting for the second patent to issue.

## C.    The Early Stage of This Action Does Not Support Yahoo!'s Motion For a Stay

This action is in the early stages, but it is still further along than any proceedings regarding Zoetics' ownership rights because that dispute does not even exist. In addition, considering the past interaction between Yahoo! and Zoetics and the fact that Zoetics is in bankruptcy, Zoetics intends to seek an expedited discovery schedule. And, of course, there will be no discovery from Yahoo! in the bankruptcy proceedings. Yahoo! has already thwarted such efforts. Thus, Zoetics believes that an expedited discovery and disposition of this case will actually provide for a more efficient and just resolution of this action. Therefore, Plaintiffs respectfully request that the Court deny Yahoo!'s motion and order it to file an answer as soon as practicable.

## IV.    YAHOO! HAS NOT MET ITS BURDEN OF CLEARLY SHOWING THAT A TRANSFER OF VENUE IS APPROPRIATE

Yahoo!'s motion to transfer should be denied because it has not met its burden to establish that the balance of the interest strongly weigh in favor of a transfer:

1.    Yahoo! and ZoEmail are both incorporated in Delaware; Therefore, Plaintiffs have a rational and legitimate reason for choosing Delaware as the forum to litigate this case.

2.    The one main "third party" witness identified by Yahoo!, Robert J. Hall, the inventor of the patents-in-suit, is admittedly within 100 miles of this Court and is therefore subject to the Court's subpoena power. Also, Mr. Hall is an employee of AT&T which has a "business alliance" with Yahoo! in the same field as the technology at issue; therefore, Mr. Hall is likely to travel to Delaware at Yahoo!'s request. Moreover, Yahoo! has overstated the importance of the inventor's testimony, which has little relevance in patent infringement litigation.

3.    Yahoo! has identified only two third party witnesses outside the subpoena power of the Delaware Court, both of whom are prosecuting attorneys not likely to be

needed at trial. Moreover, Yahoo! has made no showing that these witnesses are unwilling to travel to Delaware for trial. In any event, the attorneys are inside and outside counsel for AT&T which has a business alliance with Yahoo! and, therefore, are likely to travel to Delaware at Yahoo!'s request.

4.    Yahoo! is a large multi-national corporation and it failed to make any particular showing as to why it would be inconvenient to litigate in Delaware. To the contrary, Yahoo! admits that litigating in Delaware is just as convenient as litigating in New York.

5.    Delaying this litigation by transferring to New York is not in the best interest of Plaintiffs, the bankruptcy creditors, or the Bankruptcy Court in New York which specifically authorized this action.

In short, Plaintiffs' selection of a Delaware forum, the convenience of the parties, the convenience of the witnesses and the interests of justice all weigh against transfer to the Southern District of New York. Yahoo!'s motion should be denied.

## A.    <u>The Standard</u>

Pursuant to 28 U.S.C. §1404(a), a district court may transfer a case to any other district in which the action may have been brought only if the transfer is necessary for the convenience of the parties and witnesses, and it is in the interest of justice to do so. <u>Stratos Lightwave, Inc. v. E20 Communications, Inc.</u>, 2002 U.S. Dist. LEXIS 5653, at *4 (D. Del. 2002) (Farnan, J.). Under the §1404(a) analysis, the Court must consider five main factors: (1) whether the action could have been properly brought in the proposed transferee court; (2) the deference to be given to the plaintiff's choice of forum; (3) convenience of the witnesses; (4) convenience of the parties; and (5) the interests of justice. <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *5. Plaintiffs do not dispute that this action could have been brought in the Southern District of New York. Thus, only elements (2) through (5) need to be analyzed for purposes of the present motion.

The burden is upon Yahoo! to establish that the balance of these interests <u>strongly</u> weighs in favor of the requested transfer:

> The burden is upon the movant to establish that the balance of interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

<u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *5, citing <u>Continental Cas. Co. v. American Home Assurance Co.</u>, 61 F. Supp. 2d 128, 131 (D. Del. 1999).[1]  Yahoo! has not met its burden.  As shown below, <u>none</u> of the factors to be considered weighs strongly in favor of transfer to Southern New York.  Thus, Yahoo!'s motion should be denied.

**B.    The Plaintiff's Choice of Forum Is Due Considerable Deference**

"A plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed."  <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *5.  Indeed, as this Court has recognized, "the Plaintiff's choice of forum is given paramount consideration."  <u>Jones Pharma, Inc.v. KV Pharmaceutical Co.</u>, C.A. No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333, at *5 (D. Del. Feb. 17, 2004) (wherein the Court held that where a plaintiff has a rational and legitimate reason to choose a forum the Court will give "paramount consideration" to the plaintiff's decision.).

Normally, a plaintiff's choice of forum is not given deference where is does not choose its "home turf."  <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *6.  However, "it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum."  <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *7.

---

[1]    Yahoo! cited eleven decisions of this Court, (including slip opinions) but apparently overlooked the <u>Stratos</u> opinion, which addressed facts quite similar to those in this case.

The fact that Yahoo! chose to incorporate in Delaware is a "rational and legitimate reason" for choosing Delaware. Id. It would be inappropriate to disregard "the deference the Court must give to Plaintiff's choice of forum . . . where, as here, Plaintiffs have a rational and legitimate reason for choosing Delaware as the forum for the instant action. Id.; see also Datastrip (IOM) Ltd. v. Symbol Technologies, Inc., C.A. No 97-70-JJF (D. Del. Nov. 25, 1998), slip op. at 5 (App. Ex. H), citing Joint Stock Society v. Heublein, Inc., 936 F. Supp,. 177, 187 (D. Del. 1996). This Court, in Datastrip, noted the inherent unfairness in allowing a defendant such as Yahoo! to disown the responsibilities of incorporating in Delaware after it had gained the benefits of choosing that forum:

> [T]he Court will presume that by incorporating in Delaware, Defendants sought whatever substantial benefits they believed Delaware corporations enjoy.    Now, having received the benefits incident to Delaware incorporation, Defendants should not complain that another corporation has decided to sue them here.  Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993).  In addition to being incorporated in Delaware, Plaintiff maintains and Defendants do not contest that Defendants also do business in Delaware.

Datastrip, slip op. at 5 (Exhibit H); See also: Stratos, 2002 U.S. Dist. LEXIS 5653, at *7 ("[Defendant], having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here"). The identical factors cited in Datastrip and Stratos are present here. Yahoo! chose this forum to incorporate – nobody dragged it here. And Yahoo! cannot deny that it does business in Delaware, and that accused infringement is occurring in this district. Thus, Plaintiffs have a rational and legitimate reason to sue Yahoo! in Delaware which should not be lightly disregarded.

Finally, Yahoo!'s arguments regarding Plaintiffs' lack of contacts with Delaware are immaterial. In Stratos, this Court stated,

E20 continuously argues that Stratos' contacts with Delaware are "de minimus, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

Stratos, 2002 U.S. Dist. LEXIS 5653, at n. 1.

Therefore, Plaintiffs' forum preference, as well as Yahoo!'s Delaware incorporation, weigh heavily in favor of maintaining this action in Delaware.

## C.   "Convenience of the Witnesses" Weighs in Favor of Delaware

The availability and convenience of non-party witnesses is an important factor in a venue transfer analysis, "but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum." Stratos, 2002 U.S. Dist. LEXIS 5653, at *5. A witness is determined to be unavailable for trial if they are (1) reluctant to testify and (2) beyond the subpoena power of the Court. Id. at *7. In Stratos, this Court denied a motion to transfer in part because, "[n]o witness, reluctant to testify, beyond the subpoena power of the Court, has been identified." Id. Here, Yahoo! cannot identify a single witness who is reluctant to testify and beyond the subpoena power of the Court.

The one main "third party" witness identified by Yahoo! is Robert J. Hall, the inventor of the patents-in-suit. Mr. Hall resides in New Jersey and is an employee of AT&T Research in New Jersey. Yahoo! admits in its brief that Mr. Hall is located within the 100 miles of the Delaware Court as measured by a straight line "as the crow flies" test. (Yahoo! Brief, at p. 19). The vast majority of courts, including this Court, apply the straight line test to determine the 100-mile distance provided for under Rule 45. See Hill v. Equitable Bank, Nat'l Ass'n, 115 F.R.D. 184, 186 (D. Del. 1987). In Hill, the Court explained the rationale behind using the straight line test: "[u]sing a straight line measurement will avoid trivial disputes over what is the ordinary and usual travel route."

The straight line test is also in harmony with the predominant interpretation given to "100 miles" in Rule 4. Id. (citations omitted). Therefore, Mr. Hall is within the subpoena power of this Court and is therefore available for trial if the trial is conducted in Delaware. In any case, Yahoo! has made no showing that Mr. Hall is reluctant to travel to Delaware to testify at trial.

In addition, Yahoo! has greatly exaggerated the importance of Mr. Hall's testimony. The key issues in this case do not involve the inventor at all. For example, a patent infringement determination is a two-step process: first the claims are interpreted by the Court and then the interpreted claims are compared to the accused devices. Streamfeeder, LLC v. Sure-Feed Systems, Inc., 175 F.3d 974, 981 (Fed. Cir. 1999). It is well settled that claims are interpreted as a matter of law by the Courts based solely upon the intrinsic record. Insituform Technologies, Inc. v. Cat Contracting, Inc., 99 F.3d 1098, 1108 (Fed. Cir. 1996). The inventor's testimony is not a tool in claim interpretation and, in fact, the litigation testimony of an inventor attempting to alter the written record has been sharply criticized by the Federal Circuit. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect.").

Once the claims are interpreted, they are then compared to the Yahoo! system. Clearly, Mr. Hall is not part of this analysis. And, damages in this case will be determined based upon a reasonable royalty. 35 U.S.C. § 284. Mr. Hall has no input for that analysis either.

In perhaps Yahoo!'s biggest stretch, Yahoo! suggests that it will be unable to secure the live testimony of the two prosecuting attorneys, Samuel Dworetsky and

Michael Murray.  Mr. Dworetsky is an in-house counsel for AT&T; Michael Murray is outside counsel for AT&T.  Yahoo! raises no specific, viable issue with respect to claim construction, validity, and enforceability where the testimony of the prosecuting attorneys is necessary.  Indeed, the Federal Circuit has held that the testimony of inventors should not be relied on in construing claims; *a fortiori*, the prosecuting attorneys should not be used.  Vitronics Corp., 90 F.3d at 1584.  Yahoo! cannot meet its burden by simply making bald assertions of the necessity of the testimony of Messrs. Dworetsky and Murray.

In any event, Yahoo! has made no showing that Mr. Dworetsky or Mr. Murray are reluctant to travel to Delaware to testify at trial.   As this Court has previously noted, a party must identify a third party witness "who might be reluctant to testify and who resides outside the Court's subpoena power" in order to have a significant effect on the transfer analysis.  Trilegiant Loyalty Solutions v. Maritz, Inc., C.A. No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825 at *7 (D. Del. Feb. 15, 2005); see also Stratos, 2002 U.S. Dist. LEXIS 5653.  In Trilegiant, the defendant identified a third party witness, the inventor of the patent-in-suit (Storey), that might not have been subject to the subpoena power of a Delaware court.  This contention, lacking any demonstration of a reluctance to testify, was rejected by this Court.

> With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey would be unwilling to testify on its behalf.  Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware.

Trilegiant Loyalty Solutions, 2005 U.S. Dist. LEXIS 2825 at *7-*8.

Moreover, it is highly questionable that Messrs. Hall, Dworetsky, and Murray are, in fact, "third party" witnesses who would be unwilling to travel to Delaware to testify at trial. The lucrative "business alliance" between AT&T and Yahoo! in the very field of technology at issue in this case makes it more likely than not that Messrs. Hall, Dworetsky, and Murray would cooperate with Yahoo! if Yahoo! truly needed them to testify at trial. Thus, consistent with this Court's holding in Datastrip, Stratos, and Trilegiant, the "convenience of the witnesses" does not weigh in favor of transfer.

### D. "Convenience of the Parties" Weighs in Favor of Delaware

Yahoo! admits in its brief that "neither Delaware nor the Southern District of New York is significantly more convenient than the other for Yahoo!." (Yahoo! Brief, at p. 24). Yahoo!'s admission alone should rule out "convenience of the parties" as weighing in favor of transferring this action to the Southern District of New York. Nonetheless, Yahoo! argues that "convenience of the parties" weighs in favor of transfer because (1) there are limited contacts between the lawsuit and Delaware, and (2) New York is more convenient for Plaintiffs.

As stated above, Yahoo!'s arguments regarding Plaintiffs' lack of contacts with Delaware are immaterial. In Stratos, 2002 U.S. Dist. LEXIS 5653, at n.1, this Court stated,

> E20 continuously argues that Stratos' contacts with Delaware are "de minimus, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

And despite Yahoo!'s arguments to the contrary, it is a relevant factor that Yahoo! choose to incorporate under the laws of Delaware. This Court, in Datastrip, noted the inherent

unfairness in allowing a defendant such as Yahoo! to disown the responsibilities of incorporating in Delaware after it had gained the benefits of choosing that forum:

> [T]he Court will presume that by incorporating in Delaware, Defendants sought whatever substantial benefits they believed Delaware corporations enjoy.    Now, having received the benefits incident to Delaware incorporation, Defendants should not complain that another corporation has decided to sue them here.  <u>Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.</u>, 821 F. Supp. 962, 965 (D. Del. 1993).  In addition to being incorporated in Delaware, Plaintiff maintains and Defendants do not contest that Defendants also do business in Delaware.

<u>Datastrip</u>, slip op. at 5 (Exhibit H); See also: <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *7 ("[Defendant], having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here").  The identical factors cited in <u>Datastrip</u> and <u>Stratos</u> are present here.  Yahoo! chose this forum to incorporate— nobody dragged it here.  And Yahoo! cannot deny that it does business in Delaware, and that accused infringement is occurring in this District.  Thus, Plaintiffs have a rational and legitimate reason to sue Yahoo! in Delaware which should not be lightly disregarded.

Finally, Yahoo!'s argument regarding the convenience of New York to Plaintiffs should be given no weight at all as a plaintiff's choice of forum is entitled to substantial deference (especially here where Plaintiffs had a rational and legitimate reason for choosing Delaware) and should not be lightly disturbed.  <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *5 ("a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed.").

The "convenience of the parties" does not weight in favor of transfer.

E.    **Yahoo! Has Made No Proper Showing That the Interests of Justice Favor the Southern District of New York**

There is no strong local interest in litigating this action in New York. As this Court stated in Jones Pharma, Inc., 2004 U.S. Dist. LEXIS 2333, at *8:

> The instant action is a patent infringement case, and, as the Court held in Stratos, rights relating to patents are not local or state matters. Therefore, patent rights cannot give rise to a local controversy or implicate local interests.

(citing Stratos, 2002 U.S. Dist. LEXIS 5653). Similarly, the instant action is a patent infringement case, and therefore where the infringement occurred does not weigh strongly in favor of transfer. Id.

1.    **The Bankruptcy Action in New York Does Not Contain a Substantial Overlap of Issues With This Patent Infringement Action**

As stated above, there is no "substantial uncertainty" over the ownership of the patents-in-suit. Thus, Yahoo!'s reliance on Bank of America, N.A. (USA) v. US Airways, Inc., C.A. No. 05-73-JJF, 2005 U.S. Dist. LEXIS 34902 (D. Del. 2005) is misplaced. In Bank of America, this Court transferred the case because the underlying Complaint was "functionally identical" to the administrative claims in the bankruptcy proceedings. Id. at *8-*9. That is simply not the case here. The bankruptcy case in New York does not involve any of the patent infringement, validity and damages issues that will be litigated in this patent infringement case. Also, if the case is transferred to New York, it would go to the District Court (and not the Bankruptcy Court) which would then

be in the same position as this Court.  There is no practical benefit based on an overlap of issues to transfer this case to New York[2].

Similarly, Yahoo!'s reliance on Free-Flow, Bayer, and Invitrogen is equally misplaced.  Those cases all involved transfer to a District Court where *patent infringement actions* involving the same parties, patents, and subject matter was already pending.  Free-Flow Packaging Int'l, Inc. v. Pactiv Corp., C.A. No. 03-1157-JJF, slip op. (D. Del. Apr. 8, 2005); Bayer Bioscience, N.V. v. Monsanto Co., C.A. No. 03-023-GMS, 2003 WL 1565864 (D. Del. March 25, 2003);  Invitrogen Corp. v. Stratagene Holding Corp., C.A. No. 00-620-JJF, slip op. (D. Del. Apr. 11, 2001).  Here, there is no patent infringement action pending in New York, and as stated above, there is  no overlap of issues with the bankruptcy case.

### 2.    The Most Practical Public Consideration<br>Is the Swift Resolution of This Case

Plaintiffs' primary interest  is that the case be resolved swiftly.  Plaintiff, Zoetics, Inc., is in bankruptcy and its principal assets are the patents-in-suit.  Plaintiffs chose Delaware because Yahoo! is incorporated in Delaware, and their counsel are familiar with litigating patent cases in Delaware and this Court is renowned for its substantial experience with patent litigation.  If, and when, Yahoo! files its answer in this case (which it should be ordered to do immediately upon denial of these motions) Plaintiffs plan to ask this Court for an expedited discovery schedule.

---

[2]    As for Yahoo!'s statement regarding counterclaims, Plaintiffs are aware of no legal authority which would preclude Yahoo! from filing counterclaims in this lawsuit and Yahoo! has not cited any authority for such a proposition.  In any event, Plaintiffs would consent to Yahoo!'s counterclaims, if any, being heard in this lawsuit.

Yahoo!'s attempts to stay and transfer this case appear to stem from a strategy to delay and put pressure on a Plaintiff in bankruptcy. Yahoo! twice sought one-month extensions to answer the Complaint, and instead of answering, filed these motions to further delay resolution of the dispute between the parties. Swift resolution of this case is clearly in the best interests of Plaintiffs, the Bankruptcy Court in New York, and Zoetics' creditors. Further delaying this case by means of a transfer to New York does not serve anyone's interest.

### V.    CONCLUSION

Yahoo!'s motion for transfer and stay should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

May 12, 2006

Josy W. Ingersoll (# 1088) [jingersoll@ycst.com]
Karen L. Pascale (# 2903) [kpascale@ycst.com]
Elena C. Norman (# 4780) [enorman@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
  *Attorneys for Plaintiffs,*
  *Zoetics, Inc. and ZoEmail, LLC*

OF COUNSEL:

Paul K. Vickrey
Douglas M. Hall
Frederick C. Laney
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, IL  60602
(312) 236-0733

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 12, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> Email: mbgefiling@mnat.com

I further certify that on May 12, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### *By FedEx and E-Mail*
>
> Michael A. Jacobs [mjacobs@mofo.com]
> MORRISON & FOERSTER LLP
> 425 Market Street
> San Francisco, CA 94105
> (415) 268-7455
>
> Matthew M. D'Amore [mdamore@mofo.com]
> Kyle W.K. Mooney [kmooney@mofo.com]
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, NY 10104-0050
> (212) 468-8168

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L. Pascale*

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  kpascale@ycst.com
   *Attorneys for Plaintiffs, Zoetics Inc. and ZoEmail, Inc.*

058956.1020