IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOETICS, INC., and ZOEMAIL, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 06-108-JJF |
| ) | |
| YAHOO!, INC., ) | |
| ) | |
| Defendant. ) | |

**APPENDIX OF EXHIBITS TO
PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
TO YAHOO!'S MOTION TO STAY AND TRANSFER**

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Josy W. Ingersoll (# 1088)
Karen L. Pascale (# 2903)
Elena C. Norman (# 4780)
The Brandywine Building
1000 West St,. 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

*Attorneys for Plaintiffs Zoetics, Inc.
and ZoEmail, LLC*

OF COUNSEL:

Paul K. Vickrey
Douglas M. Hall
Frederick C. Laney
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street
Suite 4600
Chicago, IL 60602
(312) 236-0733

May 12, 2006

**TABLE OF CONTENTS**

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Joel Tucciarone in Opposition to Yahoo!'s Motion to Stay and Transfer |
| B | Settlement Letter to Ron Bell from Paul K. Vickrey dated June 14, 2005 |
| C | Memo to the Zoetics Team from Douglas M. Hall dated July 6, 2005 regarding voicemail received from Lisa McFall, Yahoo! IP Counsel |
| D | Letter to Paul K. Vickrey from Lisa McFall dated August 16, 2005 responding to Paul's letter to Ron Bell of June 29, 2005 |
| E | Email from Michael A. Jacobs from Douglas M. Hall dated February 9, 2006 regarding a counter offer from Yahoo!'s to Zoetics' license proposal |
| F | Declaration of B. Lane Hasler in Opposition to Yahoo!'s Motion to Stay and Transfer |
| G | Press Release re: AT&T and Yahoo! Expand Relationship to Provide Consumers Internet-Based Voice Communications Services; Yahoo! Messenger with Voice Gives AT&T Yahoo! Users PC-to-Phone and Phone-to-PC Voice Calling Capabilities |
| H | Datastrip (IOM) Limited v. Symbol Technologies, Inc. And The Tracker Corporation of America, No. 97-70-JJF - Memorandum Opinion dated November 25, 1998 |

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on May 12, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> Email: mbgefiling@mnat.com

I further certify that on May 12, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### *By FedEx and E-Mail*
>
> Michael A. Jacobs [mjacobs@mofo.com]
> MORRISON & FOERSTER LLP
> 425 Market Street
> San Francisco, CA  94105
> (415) 268-7455
>
> Matthew M. D'Amore [mdamore@mofo.com]
> Kyle W.K. Mooney [kmooney@mofo.com]
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, NY 10104-0050
> (212) 468-8168

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L Pascale*

Karen L. Pascale (No. 2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
Email: kpascale@ycst.com
   *Attorneys for Plaintiffs, Zoetics Inc. and ZoEmail, Inc.*

- 2 -

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZOETICS, INC., and ZOEMAIL, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-108-JJF |
| | ) | |
| YAHOO!, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JOEL TUCCIARONE IN OPPOSITION
## TO YAHOO!'S MOTION TO STAY AND TRANSFER

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (# 1088)
Karen L. Pascale (# 2903)
Elena C. Norman (# 4780)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391,
Wilmington, Delaware 19899-0391
Phone: 302-571-6600

*Attorneys for Plaintiffs, Zoetics, Inc.
and ZoEmail, LLC*

OF COUNSEL:

Paul K. Vickrey
Douglas M. Hall
Frederick C. Laney
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street
Suite 4600
Chicago, IL 60602
(312) 236-0733

May 12, 2006

I, JOEL TUCCIARONE, declare as follows:

1.     I am the President of Zoetics, Inc.

2.     In January of 2004, Zoetics approached Yahoo! to discuss license of its '479 patent.

3.     On April 30, 2004 a meeting was held between Zoetics, Yahoo! and Yahoo!'s outside counsel; I was represented at that meeting by our legal counsel.  At that meeting, Yahoo!'s outside counsel reported that they "needed two months to review the patent field."

4.     After nearly four months passed without word from Yahoo!, Zoetics contacted Yahoo! again; thereafter on August 25, 2004, Yahoo! sent Zoetics a letter stating "Yahoo! has concluded that it does not require a license under this patent."

5.     In June of 2005, Zoetics through its counsel wrote Yahoo! again offering a license under the '479 patent.

6.     On January 27, 2006, the parties held a telephone settlement conference in which I was a participant.  During that conference, Yahoo! made no allegation that Zoetics did not own the patents-in-suit; nor did Yahoo! discuss any prior art.  Zoetics made a settlement demand to which Yahoo!'s counsel said that Yahoo! would respond likely within a week.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 11, 2006

Joel Tucciarone

[7-zmlegal-c-legal_declaration.doc]

# EXHIBIT B

## NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515

———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASIMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY

June 14, 2005

This letter contains a settlement proposal and is being made as part of settlement discussions between the parties. It should be understood that neither the letter nor its contents can be used in the litigation and that this and any future settlement discussions between the parties will be treated as coming under **Rule 408, Fed.R.Evid.**

**Via Facsimile (408) 349-3301**
**and First Class Mail**

Mr. Ron Bell
Deputy General Counsel
Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94089

Re:     License Proposal for United States Patent No. 5,930,479

Dear Mr. Bell:

We represent Zoetics, Inc. ("Zoetics") in the licensing and enforcement of its United States Patent No. 5,930,479 (the "'479 patent" or "Zoetics patent"). A copy of the '479 patent is enclosed. As you are aware, Zoetics' patent relates generally to sending and receiving authorized messages from a sender to a recipient in a network, and particularly to using a channelized address to send the message. Examples of applications employing this technology include e-mail and instant messaging services and applications. A commercial example includes the Address Guard feature of your Yahoo! e-mail applications.

On January 19, 2004, my client first notified Yahoo! of the '479 patent through a letter from Joel D. Tucciarone to Terry S. Semel. A copy of that letter is enclosed. Though some discussions were held, the dialogue ended after Yahoo! promised to identify purportedly pertinent prior art, but failed to do so. And, Yahoo! has continued its use of the Address Guard feature. Therefore, Zoetics has retained our law firm to assist with its efforts to license the '479 patent.

The purpose of this letter is to offer Yahoo! one last opportunity to engage in a meaningful license negotiation.

**EXHIBIT**

tabbies

B

**The Patented Inventions**

The inventions disclosed in the Zoetics patent were developed by Dr. Robert J. Hall. Dr. Robert J. Hall received the B.S. degree summa cum laude from the University of California, Berkeley, in 1982. He earned the S.M., E.E., and Ph.D. degrees from the Massachusetts Institute of Technology. Since February 1991, he has been a Member of Technical Staff (Principal Investigator) first at AT&T Bell Laboratories and then AT&T Labs Research, working in the areas of automated software engineering, requirements engineering, and the security and privacy of Internet applications like email and service-oriented computing. He serves on the editorial board of the journal Automated Software Engineering as well as the steering and program committees of the annual IEEE International Conference on Automated Software Engineering.

Electronic mail (e-mail) has become increasingly popular as a form of communication in today's society. Unfortunately, the increase in popularity of e-mail has corresponded with the increase in the amount of "junk" mail or "spam". Any person who has used e-mail for a sustained period of time has encountered the "junk" mail problem to one degree or another. Dr. Hall identified the potential "junk" mail problem at a very early stage in the development of e-mail and the Internet. A primary consumer-oriented aspect of Dr. Hall's inventions was to greatly reduce the overwhelming tide of unwanted and disruptive "junk" mail or "spam". One embodiment of Dr. Hall's inventions involved using a common address ("base name") portion and a channel identifier ("keyword") portion in a sender's e-mail address to allow a user to control the acceptance or rejection stream of e-mail into his or her inbox.

**Infringement**

Zoetics now owns Dr. Hall's '479 patent, which is applicable to Yahoo!'s Address Guard feature. We believe that at least claims 1, 2, 4, 7, 8, 16, 17, 19, 22, 24, 26, 27, 28, 29, 30, 32, 33, 38, 39, 41, 46, 49, 50, 55, 56, 57 and 64 of the '479 patent literally cover this feature. We have enclosed a copy of the '479 patent, along with a detailed claim chart showing the application of representative claims to Yahoo!'s Address Guard feature.

**License Offer and Invitation to Meet**

We are aware that Yahoo! has at least 2.0 million users for its Yahoo! Mail Plus package which includes Address Guard as one of the features. The current fee for Yahoo! Mail Plus is approximately $20.00 per year. We are also aware that SBC Yahoo service (of which Address Guard is a feature) has at least 5.5 million subscribers, each of whom has multiple email addresses. The current fee for SBC Yahoo is approximately $20.00 - 30.00 per month.

In addition, we are aware that in Canada, through Rogers Cable, there are at least 1.0 million subscribers, each of whom has multiple Yahoo! managed email addresses. Further, at least 3.3 million subscribers in the UK have the Address Guard feature available to them through the BT Group. We are also aware that Yahoo! is finalizing a deal with Verizon which has at least 3.3

million DSL subscribers. Verizon has indicated that Yahoo! email, including Address Guard, will be the default user choice. Finally, Yahoo! also operates email services, including the Address Guard email feature, in at least twenty-five (25) countries worldwide. We are aware that with each of these instances significant value is derived by Yahoo! from the incorporation of technology protected by the Zoetics '479 patent.

Based in large part on the use described above, Zoetics is prepared to offer a license to Yahoo! which includes, specifically, a full release for the Address Guard email feature and paid-up license under the Zoetics patent in exchange for a one-time fee based on a royalty rate of $0.13 per user per month for past infringement and through the life of the patent. This one-time fee is based upon a royalty rate that is a very small percentage of the per user revenue for the life of the patent. This offer further represents a significant discount because it assumes <u>no growth</u> in the number of users and is derived primarily from the number of current SBC Yahoo! users. This one-time fee will be in line with typical licenses in the industry and the single payment sought will represent a significant discount on Yahoo!'s potential liability.

Alternatively, we are willing to offer a license to Yahoo! which includes, specifically, a full release for the Address Guard email feature for an ongoing royalty of $0.25 per user per month for all past (as of January, 2004) and future users for the life of the patent.

Please contact us in the next fourteen (14) days so that we can arrange for a meeting to discuss the terms and conditions of a license to Yahoo! under the Zoetics patent. Please also feel free to contact us should you need any further information or if we can answer any questions you might have.

Again, our goal with this letter is to reach a prompt settlement without the necessity of litigation. We look forward to hearing from you.

Very truly yours,

Paul K. Vickrey

mm:
Enclosures

cc:     Mr. Terry S. Semel, Chairman & Chief Executive Officer, Yahoo! Inc.
        Mr. Jonathan Sobel, Esq., SVP, General Counsel and Secretary, Yahoo! Inc.

# EXHIBIT C

# Memo

To:       Zoetics Team

From:     DMH

Re:       Yahoo! Response

Date:     July 6, 2005

---

Paul Vickrey received the following voice mail from Lisa McFall (sp?), IP counsel at Yahoo!:

> I'm IP counsel here and I've had your recent correspondence on the '479 patent forwarded to me. I just wanted to let you know that we are evaluating the opportunity. I'm relatively new to the scene and the people who were involved in previous negotiations are no longer with the company so I am in the process of gathering up what has gone on before and hope to have some information to you in the next few weeks. My direct dial is 408-349-4371. Please feel free to give me a call to discuss and my address is still the same as when you sent the letter to Ron Bell so you are free to correspond with me that way as well. Thanks very much and give me a call if you have questions.

Paul is traveling in Dallas but will contact Ms. McFall from the road. We should still plan on meeting to discuss on Friday, July 8, 2005.



EXHIBIT

C

# EXHIBIT D



August 16, 2005

*Via Facsimile*

Paul K. Vickrey, Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL 60602-4515

      Re:   U.S. Patent No. 5,930,479 (Hall)

Dear Mr. Vickrey:

      I write in response to your June 29th letter to Ron Bell. In your letter, you allege that Yahoo! "promised to identify purportedly pertinent prior art [for the '479 patent], but failed to do so."

      I am pleased to identify this art for you. This art demonstrates that every claim that allegedly covers Yahoo! Mail's AddressGuard feature is invalid.

      **qmail.** Dan Bernstein, now a professor at the University of Illinois in Chicago, developed a mail transfer agent known as "qmail" as a graduate student at the University of California, Berkeley. The earliest versions of qmail disclose "extension addresses" of the form "user-ext@domain."[1] These extension addresses are user-selectable, as "each user controls all e-mail addresses [of this] form."[2] Delivery to the user "is controlled by the file .qmail-ext."[3] If this file does not exist, "qmail-alias will try some default .qmail files."[4] "If none of these exist, qmail-alias will bounce the message."[5] qmail was developed in 1995 and publicly released no later than January 1996.

      **Sendmail.** Sendmail is one of the world's most popular (if not *the* world's most popular) mail transfer agents. Eric Allman originally developed Sendmail as a graduate student at the University of California, Berkeley in 1981. Sendmail version 8.7 and later versions (including version 8.81, dated December 1995) support "plussed users" or "plus detail" information, or

---

[1] *See, e.g.,* ftp4.de.freesbie.org/pub/misc/qmail/qmail-0.72.shar.gz.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.* (emphasis added).



addresses of the form "root+client1@server."[6]  "On the server, this will match an alias for 'root+client1.'  If that is not found, the alias 'root+*' will be tried, then 'root.'"[7]

**Andrew Message System.**  Carnegie Mellon's "Andrew Message System" ("AMS"), developed in the late 1980s, also featured user-extensible addresses.  The developers' academic papers confirm that e-mail addresses could take the form of "user+info@host" and were user-selectable.[8]  These papers further confirm that, using the "Filtering Language for the Andrew Message System" ("FLAMES"), a user could "sort incoming mail by keywords, by sender, or by any other aspect of the mail message," and could "place mail in the correct folder."[9]  Extensions were user-selectable, as "the FLAMES program processing that user's mail box [would] take whatever action the user [wanted], keying off the text to the right of the '+' character.'"[10]  FLAMES also could "reject mail by returning it to its sender" based on the text following the "+" character.[11]

To the extent that Zöetics contends that AddressGuard infringes any claim of the '479 patent, it does so only by practicing the prior art.  Zöetics can confirm the operation of qmail, Sendmail, and AMS and FLAMES by reading the widely-available related literature on these topics.[12]

As an aside, I would like to point out that your June 29th letter grossly overestimates the number of actual users of AddressGuard.  Only 200,000 or so Yahoo! Mail users in the United States have enabled the AddressGuard feature.  Of these 200,000 individuals, we estimate that less than half have actually created an AddressGuard address, and that an even smaller percentage still has actually used an AddressGuard address to send or receive an e-mail.  The number of active AddressGuard users is a smaller percentage still.  Thus, even assuming that AddressGuard falls within the scope of the '479 patent, the number of affected customers nowhere approaches the millions suggested by your letter.

Sincerely,

Lisa McFall
Senior IP Counsel

---

[6] *See* www.sendmail.org/m4/misc_features.html; www.sendmail.org/~ca/email/README.cf.html.
[7] *Id.*
[8] *See, e.g.,* Nathaniel S. Borenstein & Chris A. Thyberg, "Power, Ease of Use, and Cooperative Work in a Practical Multimedia Message System," 34 *Int'l J. Man-Machine Studies* 229, 248 fn. (1991).
[9] *Id.* at 237.
[10] *Id.* at 248 fn.
[11] *Id.* at 237; *see also* 248 fn.
[12] *See, e.g.,* www.lifewithqmail.org; www.sendmail.org; Borenstein, *supra.*

# EXHIBIT E

## Hall, Douglas M

**From:**     Jacobs, Michael A. [MJacobs@mofo.com]
**Sent:**     Thursday, February 09, 2006 2:22 PM
**To:**       Hall, Douglas M
**Subject:**  RE: Zoetics/Yahoo!

Doug,

Thanks for your message.

Your offer/demand was, from our perspective, somewhere above the stratosphere, and our current view is that a counter-offer would not be productive.

Michael

-----Original Message-----
**From:** Hall, Douglas M [mailto:dhall@nshn.com]
**Sent:** Thursday, February 09, 2006 9:35 AM
**To:** Jacobs, Michael A.
**Subject:** Zoetics/Yahoo!

Michael -

I am writing to find out whether and when we can expect a counter offer from Yahoo! to Zoetics' license proposal.  Please feel free to call me with any questions.  Thanks.

Douglas M. Hall
Niro, Scavone, Haller & Niro
181 W. Madison St., Suite 4600
Chicago, Illinois 60602
312.236.0733

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

**EXHIBIT**

tabbies'

E

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOETICS, INC., and ZOEMAIL, INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     C.A. No. 06-108-JJF |
| | ) |
| YAHOO!, INC., | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF B. LANE HASLER IN OPPOSITION
## TO YAHOO!'S MOTION TO STAY AND TRANSFER

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Josy W. Ingersoll (# 1088)
Karen L. Pascale (# 2903)
Elena C. Norman (# 4780)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600
    *Attorneys for Plaintiffs, Zoetics, Inc.
    and ZoEmail, LLC*

OF COUNSEL:
Paul K. Vickrey
Douglas M. Hall
Frederick C. Laney
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison Street
Suite 4600
Chicago, IL  60602
(312) 236-0733

May 12, 2006

I, B. Lane Hasler, declare as follows:

1.    I represent Zoetics, Inc. ("Zoetics") in its Chapter 11 reorganization bankruptcy case pending in the Southern District of New York.

2.    On October 20, 2004, Zoetics filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.    On February 25, 2005, Zoetics filed an Application for Order authoring the retention of Niro, Scavone, Haller & Niro as special intellectual property counsel in order to enforce Zoetics' patent rights.

4.    AT&T filed no objection to that application; in fact, AT&T has never filed any pleading in the bankruptcy case alleging that Zoetics does not own the patents-in-suit or lacks standing to enforce them.

5.    In fact, in my numerous discussions with AT&T counsel over the past 16 months, AT&T has never made such a claim.  The ownership of the patents -in-suit is not at issue in the bankruptcy case.

6.    On March 15, 2005, Judge Blackshear held that granting Zoetics request to retain patent counsel to enforce its intellectual property rights "is in the best interest of the Debtor and its estate and creditors and is authorized by Section 327(e) of Title 11 of the United States Code...." (Yahoo! Appendix, Ex. 10).

7.    On July 28, 2005, Zoetics served Yahoo! with a subpoena requesting documents pursuant to Rule 2004 of the Bankruptcy Rules of Procedure.  Yahoo! never

responded to that subpoena.

8.    On November 29, 2005, the Bankruptcy Court entered an Order compelling Yahoo! to produce documents and awarding sanctions. On February 17, 2006, Yahoo! filed a motion to vacate such order, specifically arguing that it did not have to produce documents in the bankruptcy case "given the imminence of [Zoetics'] infringement claim" After Zoetics filed this lawsuit, Zoetics agreed that the November 29, 2005 Order could be vacated.

9.    On April 11, 2006, AT&T filed a Proof of Claim asserting that it is a "secured creditor" of Zoetics. This is the first time in the bankruptcy case that AT&T claimed it is secured. In my numerous discussions with AT&T counsel over the past 16 months, AT&T has not asserted a secured claim in the bankruptcy case.

10.    AT&T is not a secured creditor because AT&T filed its UCC -1 Financing Statement on July 26, 2005, a date which is within 90 days of the October 20, 2005 bankruptcy filing by Zoetics, making it a preferential transfer void under Section 547 of the Bankruptcy Code. AT&T is a general unsecured creditor with no rights in the patent-in-suit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2006.

_B. Lane Hasler_
B. Lane Hasler

# EXHIBIT G

# YAHOO! MEDIA RELATIONS



| Company Overview | → |
|---|---|
| Press Releases | |
| Press Resources | → |
| Copyright & Permission Agents | → |
| Speakers' Bureau | |
| Product Information | → |
| Yahoo! Blogs | → |
| Contact Us | |

## Press Release

### AT&T and Yahoo! Expand Relationship to Provide Consumers Internet-Based Voice Communications Services; Yahoo! Messenger with Voice Gives AT&T Yahoo! Users PC-to-Phone and Phone-to-PC Voice Calling Capabilities

SAN ANTONIO & SUNNYVALE, Calif., Apr 26, 2006 (BUSINESS WIRE) – AT&T Inc. (NYSE:T), the nation's leading DSL high-speed Internet and consumer voice services company, and Yahoo!(R) Inc. (Nasdaq:YHOO), the No. 1 global Internet destination, announce their new, integrated Internet-based voice communications services. Starting today, the companies will offer a co-branded version of Yahoo! Messenger with Voice to AT&T Yahoo! High Speed Internet subscribers and all Yahoo! users in AT&T's traditional 13-state local service area. Yahoo! also today launched, out of beta, the newest version of Yahoo! Messenger with Voice (http://messenger.yahoo.com) to consumers worldwide.(1) As part of this expanded relationship, AT&T companies will be Yahoo!'s preferred network termination providers for the PC-based calling services in Yahoo! Messenger with Voice service globally.

Consumers can get enhanced PC-based calling capabilities for both making and receiving phone calls, depending on the combination of services purchased, at some of the lowest rates in the Voice over Internet Protocol (VoIP) industry. With the Phone Out feature, consumers in the U.S. can make VoIP PC-to-Phone calls by using their PC to place calls to traditional or mobile phones to more than 180 countries.(2) Calls within the U.S. and to over 30 other countries can be made for two cents a minute or less.(3) Additionally, U.S. consumers can receive calls on their PC from traditional and mobile phones for $2.99 a month or $29.90 a year with the Phone In feature. Phone In gives people a virtual presence in their city of choice: Wherever they travel, their phone number will follow them.

"AT&T Yahoo! Messenger with Voice enhances and adds value to our broadband service," said Scott Helbing, chief marketing office, AT&T Consumer. "It also underscores our commitment to lead the industry in delivering the next generation of integrated communications and entertainment services."

"Together we can continue to create seamless experiences that bridge the traditional telecommunications and Internet worlds. We are excited to bring together Yahoo!'s Internet community and applications with AT&T's history of innovation, high-quality network, and leading voice and high speed Internet services," said Steve Boom, senior vice president, broadband, Yahoo! Inc.

Key features of the service include:

– Phone Out: People can easily stay in touch with their friends and family in more than 180 countries across the Europe, Asia and the Americas, with low-cost calling from their PC to traditional phones and mobile phones. Calls within the U.S. and to more than 30 other countries can be made for two U.S. cents a minute or less.(3) Prepaid credit plans are available. Specific calling rates can be found at: http://voice.yahoo.com.

– Phone In: The Phone In service gives people the ability to receive calls on their PC from traditional and mobile phones. For $2.99 a month or $29.90 a year, people can select a personal phone number, and receive incoming calls at no additional charge. For instance, New York residents, who have friends and family in London, are able to choose a local London-based phone number. When remote friends and family make calls to the personal



**EXHIBIT**

tabbies'

G

number, they will be charged for placing a local phone call to that phone number. People can choose to have multiple phone numbers, and wherever they travel, their phone numbers will follow them. Country-based phone numbers are initially available in France, the United Kingdom, and the United States with additional country-based numbers available in the coming months.

-- Contact Search Bar: The new Contact Search Bar provides a fast way to find and quickly connect with friends and family. As people type their friends' names, Yahoo! IDs, phone numbers, nicknames or any other information stored in their contact details, matching results will automatically populate the Contact Search Bar at the top of the friends' list. Choosing how to communicate with friends, whether it is through text IM, voice calling, e-mail or mobile text messaging, becomes easier than ever.

-- Free Voicemail: People will now be able to take advantage of a free voicemail service with both their PC-to-PC inbound calls and Phone In calls within the service. If a call is missed, whether from a PC, traditional phone or mobile phone, people can easily retrieve the message at no additional cost.

AT&T Inc. and Yahoo! announced their strategic alliance in November 2001 and launched co-branded high speed Internet and Dial services less than a year later. The companies announced in late 2004 a multi-year extension of their industry-leading alliance with the intent to bring the AT&T Yahoo! customer experience beyond the PC, such as to home television and audio systems, Cingular Wireless handsets, AT&T Wi-Fi and AT&T Home Networking equipment. Today, the alliance stands as one of the most successful in the industry, based on subscriber growth and the strength of its award-winning features.

About AT&T

AT&T Inc. is one of the world's largest telecommunications holding companies and is the largest in the United States. Operating globally under the AT&T brand, AT&T companies are recognized as the leading worldwide providers of IP-based communications services to business and as leading U.S. providers of high-speed DSL Internet, local and long distance voice, and directory publishing and advertising services. AT&T Inc. holds a 60 percent ownership interest in Cingular Wireless, which is the No. 1 U.S. wireless services provider with 55.8 million wireless customers. Additional information about AT&T Inc. and AT&T products and services is available at www.att.com.

About Yahoo!

Yahoo! Inc. is a leading global Internet brand and one of the most trafficked Internet destinations worldwide. Yahoo! seeks to provide online products and services essential to users' lives, and offers a full range of tools and marketing solutions for businesses to connect with Internet users around the world. Yahoo! is headquartered in Sunnyvale, California.

(C) 2006 AT&T Knowledge Ventures. All rights reserved. Subsidiaries and affiliates of AT&T Inc. provide products and services under the AT&T brand. Yahoo! and the Yahoo! logo are trademarks and/or registered trademarks of Yahoo! Inc. All other product names and/or company names used herein may be protected as trademarks of their respective owners.

(1) In the United States, Yahoo! Voice Phone Out and Phone In services are provided by Yahoo! Communications USA Inc.

(2) PLEASE NOTE: 911 and other emergency service numbers currently cannot be accessed through Yahoo! Messenger with Voice or Yahoo! Voice services. Users must use a traditional phone or mobile phone to access 911 or other emergency service numbers. Internet access and compatible PC required. Yahoo! Voice Phone Out and Phone In services must be purchased separately and require users to download Yahoo! Messenger with Voice version 7.5.

(3) Rates in the U.S. only. Calls to mobile phones or other wireless devices may be charged at higher rates than calls to traditional landline phones. All rates, promotional or

# EXHIBIT H

*FILED*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOV 25  12 18 PH '98

CLERK
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,                :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :        C.A. No. 97-70-JJF
                                        :
SYMBOL TECHNOLOGIES, INC. and           :
THE TRACKER CORPORATION                 :
OF AMERICA,                             :
                                        :
            Defendants.                 :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel:  Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire of BOUCHARD, FRIEDLANDER &
MALONEYHUSS, Wilmington, Delaware.
Of Counsel:  Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

November 25, 1998
Wilmington, Delaware

EXHIBIT

tabbies

H

Farnan, Chief Judge.

Presently before the Court is Defendants' Motion To Transfer This Action To The Eastern District Of New York (D.I. 21). By their Motion, Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America, seek relief based upon 28 U.S.C. §1404(a) which provides that a district court has discretion to transfer any civil action to any other district or division where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. In opposition, Plaintiff, Datastrip (IOM) Limited, asserts that Defendants have failed to demonstrate that the interest of justice favors transfer, or that the convenience of the parties and witnesses outweigh the deference that should be given to Plaintiff's choice of forum. For the reasons discussed, the Court will deny Defendants' Motion To Transfer This Action To The Eastern District Of New York (D.I. 21).

## I.  BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products. Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label. A bar code consists of a pattern of printed bars and spaces which is used to input information into a computer by means of optical scanning.

In this action, Plaintiff asserts that Defendants infringed

the United States Patent No. 4,782,221 ("'221 Patent") owned by
Plaintiff.  The '221 Patent covers the invention of a two-
dimensional bar code.  Plaintiff alleges that Defendant Symbol
made certain modifications and additions to the technology of the
'221 Patent, and filed its own patent application based on these
changes.  Specifically, Plaintiff claims that Defendant Symbol's
Patent No. 5,304,786 ("'786 Patent") and its other patents on
technology used in conjunction with printed bar codes have
deprived Plaintiff of its patent rights and induced infringement
of the '221 Patent.  Additionally, Defendant Tracker manufactures
and sells kits which are alleged by Plaintiff to incorporate a
bar code of the type covered by the '221 Patent and thus to
directly infringe Plaintiff's '221 Patent.

The parties have exchanged their initial disclosures as
required by Rule 26(a)(1) and have served initial discovery
requests.  Plaintiff has sought and received permission from the
Court to defer Rule 26(a)(1) disclosure of its damage theories
until January, 1998.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. §1404(a), a district court may
transfer any civil action to any other district in which the
action may have been brought, if the transfer is necessary for
the convenience of the parties and witnesses, and it is in the

2

interest of justice to do so.  When considering whether to
transfer an action, the Court must first determine whether the
action could have originally been brought in the transferee
forum; however, because Plaintiff does not contest that this
action could have been brought in the Eastern District of New
York, the Court will address whether (1) the convenience of the
parties; (2) the convenience of the witnesses; and (3) the
interest of justice warrant a transfer in this case.  28 U.S.C.
§1404(a).

        In determining whether a transfer is appropriate, the United
States Court of Appeals for the Third Circuit has emphasized that
a district court should examine all relevant factors to determine
whether the litigation would proceed more conveniently and
whether the interests of justice would be better served by a
transfer to a different forum.  <u>Jumara v. State Farm Ins. Co.</u>, 55
F.3d 873, 879 (3d Cir. 1995).

**B.    <u>FACTORS WEIGHED BY THE COURT</u>**

        1.    <u>Plaintiff's Forum Preference</u>

        A plaintiff's choice of forum is entitled to substantial
deference and should not be lightly disturbed.  <u>Shutte v. Armco
Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted).
The burden is upon the movant to establish that the balance of
the interests strongly weighs in favor of the requested transfer.
<u>Id.</u>  A transfer will be denied if the factors are evenly balanced

3

or weigh only slightly in favor of the transfer.  <u>Allied-Signal,</u>

<u>Inc. v. Honeywell, Inc.</u>, C.A. No. 90-395, 1991 WL 495770, at *1

(D.Del. Feb. 6, 1991) (citations omitted).

     In this case, Defendants argue that Plaintiff's choice of

forum is entitled to less weight because Delaware is not the

"home turf" of Plaintiff, nor is it where the acts giving rise to

the lawsuit occurred.  Further, Defendants contend that the only

relationship that Delaware has to the instant action is that

Defendants are incorporated here.

     This Court has previously addressed the effect of a

plaintiff's choice of a non-home-turf forum on the determination

of the appropriateness of a transfer under Section 1404(a).  In

<u>In re ML-Lee Acquisition Fund II, L.P.</u>, the Court stated:

> While transfer of a case will generally be regarded
> as less inconvenient to a plaintiff if the plaintiff
> has not chosen its home turf or a forum where the
> alleged wrongful activity occurred, the plaintiff's
> choice of forum is still of paramount consideration,
> and the burden remains at all times on the defendants
> to show that the balance of convenience and the
> interests of justice weigh strongly in favor of
> transfer.

816 F.Supp. 973, 976 (D.Del. 1993) (citations omitted).[1]   The

---

     [1]  Defendants cite to <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d
873, 879 (3d Cir. 1995) as support for its home-turf argument.
Recently, this Court has addressed the decision in <u>Jumara</u> and has
noted that the home-turf rule is now subsumed in the <u>Jumara</u>
private interest factor with emphasis on "plaintiff's forum
preference."  <u>Sunds Defibrator, Inc. v. Durametal Corp.</u>, C.A. No.
96-483, 1997 U.S. Dist. LEXIS 1859, at *7 (D.Del. Jan. 31, 1997).
Furthermore, this Court found in <u>Sunds</u>, that the concept of home
turf was not meaningful in that case because the plaintiff's home

4

Court is persuaded that it would be inappropriate to disregard the deference the Court must give to Plaintiff's choice of forum under <u>Shutte</u> where, as here, Plaintiff has a rational and legitimate reason for choosing Delaware as the forum for the instant action.  See <u>Joint Stock Society v. Heublein, Inc.</u>, 936 F.Supp. 177, 187 (D.Del. 1996).

The fact that Defendants have incorporated in Delaware is one rational and legitimate reason for choosing to sue Defendants here.  <u>Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership</u>, 882 F.Supp. 359, 363 (D.Del. 1994).  Such a factor should not be regarded lightly, and the Court will presume that by incorporating in Delaware, Defendants sought whatever substantial benefits they believed Delaware corporations enjoy.  Now, having received the benefits incident to Delaware incorporation, Defendants should not complain that another corporation has decided to sue them here.  <u>Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.</u>, 821 F.Supp. 962, 965 (D.Del. 1993).  In addition to being incorporated in Delaware, Plaintiff maintains and Defendants do not contest that Defendants also do business in Delaware.

Another rational and legitimate reason for choosing to

---

offices were in Sweden.  <u>Id.</u> As in <u>Sunds</u>, Plaintiff in the instant case has its home offices in the British Isles and therefore, the fact that Delaware is not Plaintiff's home turf should not be relevant to the decision.

5

proceed against Defendants in Delaware is the fact that
Plaintiff's sole United States subsidiary is located in Delaware.
Additionally, courts in the District of Delaware have
considerable experience with patent cases, and the period of time
between filing an action and the commencement of trial is shorter
in this district than in many others.  Since sound reasons exist
for Plaintiff's choice of forum, Plaintiff's choice should be
accorded the deference suggested by <u>Shutte</u>.

2.    <u>Defendant's Forum Suggestion</u>

Defendants contend that this action should be transferred to
the Eastern District of New York, where this action could have
initially been brought.  In support of their application,
Defendants point out that Defendant Symbol is headquartered in
the Eastern District of New York, and Defendant Tracker transacts
business there which gave rise to this action.  Additionally, the
agreement between Defendants Tracker and Symbol, under which
Defendant Tracker has been purchasing bar code scanning devices,
was negotiated in the Eastern District of New York, and Defendant
Tracker allegedly has hundreds of customers for its kits and
labels there.

In response, Plaintiff asserts that another reason for
choosing Delaware as the forum for this action is because it is
relatively convenient for Defendants and more neutral than the
Eastern District of New York, which is Defendants' principal

6

place of business and residence. Courts have recognized this
neutrality argument as a legitimate and rational reason for
choosing a forum. Joint Stock Society v. Heublein, Inc., 936
F.Supp. 177, 186-87 (D.Del. 1996). Therefore, in light of
Plaintiff's objective and compelling arguments in support of its
forum choice, the Court finds the business activity of Defendants
in New York to be insufficient to justify transfer of this
action.

    3.    Convenience of the Parties

    Defendants contend that a transfer is warranted under 28
U.S.C. §1404(a) because it is necessary for the convenience of
the parties.  Defendants note at the outset that personal
jurisdiction over both Defendants is easily obtainable in the
Eastern District of New York.  Specifically, Defendants maintain
that Defendant Symbol has its headquarters, manufacturing
facilities, research and development facilities and the bulk of
its relevant documents in the Eastern District of New York.
Defendant Tracker transacts business in that district and this
action allegedly arises from said business transactions.
Additionally, Defendants argue that Symbol's chief operating
officer and other personnel should not be required to attend
trial so far from their workplace.  Finally, Defendants contend
that Plaintiff has its headquarters in the British Isles and thus
would be largely unaffected by a transfer to New York.

7

The technological advantages available to most major businesses in the 1990's make it difficult to establish that most reasonably selected litigation sites are inconvenient for the parties. Tuff Torg, 882 F.Supp. at 363. This is especially true when the defendants are substantial companies doing business in the national and international marketplace, as Defendants are here. Joint Stock, 936 F.Supp. at 189 (citations omitted). For example, Defendant Symbol is a worldwide, high technology company, which describes itself as the "largest manufacturer of bar code-driven data management systems" and maintains customer support operations and sales organizations throughout the United States and around the world.[2]

Under such circumstances, Defendants must show that litigating the case in an unwanted venue will cause an unusual burden on their business operations. Id. Specifically, Defendants must demonstrate that litigation in the forum will strain their relative physical and financial condition. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). In this case, the Court concludes that both parties can bear the financial and administrative burdens of

---

[2] This Court has even held that where a large company, having a nationwide business, makes a claim that conducting litigation away from the most convenient forum is burdensome, that claim is suspect. Discovision Associates v. Disc Manufacturing, Inc., C.A. No. 95-21, Memo. Order at 8 (D.Del. May, 18, 1995).

8

litigating away from home.  Plaintiff must travel regardless of
the forum, and Defendants have not established that litigating in
Delaware will create unreasonable or undue hardship, financially
or administratively.

Additionally, Defendants have failed to demonstrate that a
trial in Delaware will result in prolonged absences of its
officers or that the absence of a small number of employees will
significantly disrupt its operations.  The Court notes that such
a disruption would be difficult to establish when, as here, the
employees will only be traveling approximately 100 miles to the
trial.  See Joint Stock, 936 F.Supp. 177, 189 (D.Del. 1996).

    4.    Convenience of Witnesses

Defendants contend that the convenience of the witnesses
justifies transfer.  All or most of the witnesses for Defendants
live and work in the Eastern District of New York, and Defendants
assert that they are unaware of a single trial witness who lives
or works in this forum.  Defendants allege that the following are
fact witnesses who live and/or work in New York and will be
inconvenienced if the trial is held in Delaware: Mr. Pavlidis and
Dr. Swartz, two of the inventors of the technology; Mr. Fusco,
the Senior Director of the technology group; and Mr. Schuessler
and Ms. Barkan, two individuals who were instrumental in the
adoption and use of the technology as a national standard.

As this Court has noted, "'[c]onvenience of the witnesses'

9

is a phrase encompassing geographic location of witnesses
relative to the forum and an 'interest of justice'
consideration." Sherwood Medical Co. v. IVAC Medical Systems,
Inc. C.A. No. 96-305, 1996 WL 700261, at *4 (D.Del. Nov. 25,
1996).  The interest of justice factor is based on the policy
that each party should be able to procure the attendance of their
own employees for trial and contemplates a situation where
witnesses may be physically unavailable for trial in a particular
forum.  In this case, Defendants do not assert that its witnesses
would not be able to attend the trial, but rather, argue the
inconvenience to them is sufficient to warrant transfer of this
matter to New York.  In the Court's view, the mere fact that many
or all of a defendant's witnesses reside in a possible transferee
forum does not, by itself, justify a transfer.  A defendant must
demonstrate that trial in a particular forum will result in
prolonged absences of its employees from work, or that the
absence of the employees will disrupt the work of the defendant.
After considering these principles, the Court finds that because
Delaware is within driving distance of New York and several
different means of public transportation from New York to
Delaware are readily available, Defendants will certainly be able
to produce any of its employees it chooses for trial with little
or no difficulty.  Absent the prospect of unavailability, the
Court will not disturb a plaintiff's choice of forum.

10

5.   Location of Books and Records

Defendants rely on the fact that the documents they need for trial are located at Symbol's New York office.  The Third Circuit has noted that the location of the books and records to be used for litigation is relevant to the limited extent that the files could not be produced in the original forum.  Jumara, 55 F.3d at 879 (citations omitted).  Defendants have not alleged that they are unable to produce the files in Delaware.  Rather, Defendants have only asserted that the files are all located in New York, and therefore it would be easier to access them in New York.

In this case, Plaintiff has to bring its files from the British Isles to a forum in the United States, while Defendants will simply have to bring their files from New York to Delaware. In the Court's view, this is not a significant burden for Defendants because the distance between these two states is minimal, and technology has made the exchange of information easier in various formats.  Therefore, the Court finds that the location of the documentation to be presented at trial does not present a strong justification for transfer.

6.   Interests of Justice

Defendants assert that the interests of justice warrant transfer.  In particular, Defendants argue that there will likely be third party witnesses within the subpoena power of the Eastern District of New York but not within the subpoena power of this

11

Court.

The availability of compulsory process for third-party witnesses is a factor to consider in determining whether a transfer is warranted. Magee v. Essex-Tec Corp., 704 F.Supp. 543, 550 (D.Del. 1988). Specifically, Defendants list four of the named inventors of the patent, Mr. Glaberson, Mr. Mason, Mr. Santulli and Mr. Roth, as residing in Connecticut, which is outside Delaware's subpoena power, but within New York's subpoena power. Defendants also contend that the patent solicitor, Mr. Johnson, maintains offices in Connecticut, and likewise will be outside of Delaware's subpoena power. Although this is a critical factor, courts often require a party to do more than demonstrate that the subpoena power does not apply. Specifically, parties are required to present evidence that a witness is unwilling to testify. Critikon Inc. v. Becton Dickinson Vascular Access, Inc., 821 F.Supp. 962, 967 (D.Del. 1993).

Here, the Court finds that Defendants' have not represented that the third party witnesses would be unwilling to testify, and therefore, the Court assumes that the witnesses are willing to testify without a subpoena. Plaintiff alleges that they have information that at least two of the witnesses will voluntarily testify at trial. Even if the witnesses are unwilling to testify, Defendants have not explained why the use of videotaped

12

depositions would not be an adequate substitute. <u>See</u> <u>Micheel</u> <u>v.</u>
<u>Haralson</u>, 586 F.Supp. 169, 173 (E.D. Pa. 1983). Accordingly, the
Court finds that the availability of compulsory process in New
York does not tip the balance in favor of a transfer.

7.   <u>Relative Administrative Difficulty Because of Court</u>
     <u>Congestion</u>

The relative case backlog of a court is another factor that
may be considered in determining whether to grant a transfer.
<u>See</u> <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 882-83 (3d Cir.
1995). Here, Plaintiff has shown that there will likely be an
efficient resolution of this action in Delaware. In Delaware,
this case has already been scheduled for trial and discovery is
underway. The District of Delaware statistically has a lighter
docket than that of the Eastern District of New York. Because
the District of Delaware has a less congested docket, the Court
finds that this District will be able to resolve this action as
expeditiously as the Eastern District of New York.

8.   <u>Local Interests in Deciding Local Controversy</u>

Defendants contend that this dispute does not involve a
local interest, and therefore, it is unreasonable to burden a
community that has no interest in the litigation with jury duty.
<u>See</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947).
Although Defendants may be headquartered in New York, they are
Delaware corporations. Furthermore, the instant dispute can

13

hardly be considered a local New York controversy, nor does it implicate public policy unique to New York. The dispute concerns patent rights which are not local or state law matters, but rather involve a patented product which is sold internationally generating millions of dollars in revenues. Therefore, the Court finds that the local interest factor does not support a transfer.

9.    Public Policy of Fora

As emphasized above, this case does not involve a local or state law matter with unique public policies, but rather is a patent case involving federal law. As such, the public policy of Delaware will not play a role in this case and is not a factor relevant in determining the instant motion.

10.    Familiarity of Trial Judge with Application of State Law in Diversity Cases

This case is based on claims of patent infringement, and thus, the familiarity of the trial judge with the application of state law is not applicable.

After considering all of the factors relevant to a transfer in this case, the Court concludes that the balance of both the private and public interests weigh in favor of deferring to Plaintiff's original choice of forum, rather than transferring venue to the Eastern District of New York. See Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The small savings in cost, the slightly greater convenience for witnesses and the

14

availability of compulsory process do not substantially outweigh

Plaintiff's legitimate reasons for filing in Delaware.

Consequently, Defendant has failed to demonstrate that the

balance of the private and public interests outweighs Plaintiff's

original choice of forum, thus warranting a transfer.  Therefore,

the Court declines to transfer this cause of action.

### III.    CONCLUSION

For the reasons discussed, the Court will deny Defendants'

Motion To Transfer This Action To The Eastern District Of New

York (D.I. 21).

An appropriate Order has been entered.

15