IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZOETICS, INC. and ZOEMAIL, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-108 (JJF) |
| | ) | |
| YAHOO!, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT YAHOO! INC.'S MOTION TO STAY ACTION
AND TRANSFER ACTION TO THE SOUTHERN DISTRICT OF NEW YORK**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendant Yahoo!, Inc.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
415.268.7000

Matthew M. D'Amore
Kyle W.K. Mooney
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104
212.468.8000

Dated:  May 26, 2006

TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

PRELIMINARY STATEMENT                                                          1

ARGUMENT                                                                               2

I.      THE COURT SHOULD STAY THIS ACTION UNTIL THE
        NEW YORK BANKRUPTCY COURT RESOLVES THE
        OWNERSHIP OF THE PATENTS-IN-SUIT.                                        2

        A.      The Ownership of the Patents-In-Suit is in Dispute and
                Will be Resolved by the Bankruptcy Court.                        3

        B.      Plaintiffs Will Not Be Prejudiced by a Short Stay.               4

II.     THE COURT SHOULD TRANSFER THIS ACTION TO THE
        SOUTHERN DISTRICT OF NEW YORK.                                          8

        A.      Practical Considerations and Judicial Efficiency Strongly
                Favor Transferring this Action to the Southern District of
                New York.                                                         8

        B.      Significant Non-Party Witnesses Cannot Be Compelled to
                Testify in Delaware and Would be Available in New York.         10

        C.      New York Has a Far Greater Interest in this Action than
                Delaware and is the More Convenient Forum.                       13

CONCLUSION                                                                          16

<u>TABLE OF CITATIONS</u>

Page(s)

<u>Cases</u>

*3Com Corp. v. D-Link Sys., Inc.*
    No. 03-014, 2003 WL 1966438 (D. Del. Apr. 25, 2003)......................................12

*APV N. Am., Inc. v. SIG Simonazzi N. Am., Inc.*
    295 F. Supp. 2d 393 (D. Del. 2002)..............................................................14

*At Home Corp. v. Cox Commc'ns, Inc.*
    No. 02-1486, 2003 WL 22350925 (D. Del. Oct. 8, 2003)...................................14

*Bank of America, N.A. (USA) v. U.S. Airways, Inc.*
    No. 05-793, 2005 WL 3525680 (D. Del. Dec. 21, 2005) .......................................9

*Brunswick Corp. v. Precor Inc.*
    No. 00-691, 2000 WL 1876477 (D. Del. Dec. 12, 2000) ....................................14

*Commissariat à L'Énergie Atomique v. Dell Computer Corp.*
    No. 03-484, 2004 WL 1554382 (D. Del. May 13, 2004) .......................................5

*Continental Cas. Co. v. Am. Home Assurance Co.*
    61 F. Supp. 2d 128 (D. Del. 1999)...............................................................12

*Green Isle Partners, Ltd., S.E. v. Ritz-Carlton Hotel Co.*
    No. 01-202 (D. Del. Nov. 2, 2001) .............................................................12, 13

*In re Enron Corp.*
    281 B.R. 836 (Bankr. S.D.N.Y. 2002)............................................................6

*In re Valley Forge Plaza Assocs.*
    109 B.R. 669 (Bankr. E.D. Pa. 1990) ............................................................6

*Invitrogen Corp. v. Stratagene Holding Corp.*
    No. 00-620 (D. Del. Apr. 12, 2001)..............................................................14

*Landis v. N. Am. Co.*
    299 U.S. 248 (1936)...............................................................................5

*Memminger v. Infocure Corp.*
    Civ No. 00-707, 2000 U.S. Dist. LEXIS 22077 (D. Del. Nov. 14, 2000) ...........12

*Nilssen v. Everbrite, Inc.*
    No. 00-189, 2001 WL 34368396 (D. Del. Feb. 16, 2001)..............................11, 12

*Ortho Pharm. Corp. v. Genetics Inst.*
    52 F.3d 1026 (Fed. Cir. 1995)........................................................................... 4, 13

*Pfizer, Inc. v. Elan Pharm. Research Corp.*
    812 F. Supp. 1352 (D. Del. 1993).......................................................................... 4

<u>Statutes</u>

28 U.S.C. § 1404(a) ........................................................................................................... 16

Defendant Yahoo! Inc. ("Yahoo!") respectfully submits this reply memorandum in support of its motion (i) to stay the above-captioned action pending the resolution of relevant proceedings before the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and (ii) to transfer this action to the United States District Court for the Southern District of New York.

<u>PRELIMINARY STATEMENT</u>

Plaintiffs Zoetics, Inc. ("Zoetics") and ZoEmail, LLC ("ZoEmail"; collectively with Zoetics, "Plaintiffs") concede that they are suing Yahoo! on patents (the "Patents-In-Suit") obtained from AT&T Corporation ("AT&T") that they <u>have not paid for</u>. Plaintiffs likewise do not contest that AT&T retained a security interest in the Patents-In-Suit, sent a Notice of Default to Zoetics after it failed to pay for the Patents, and filed a secured claim relating to the Patents in Zoetics' New York bankruptcy proceeding (the "Bankruptcy Proceeding"). In fact, they have informed the Bankruptcy Court that they plan litigation with AT&T over that claim.

Disregarding these uncontroverted facts, Plaintiffs ask this Court to simply take them at their word that Zoetics will emerge from bankruptcy with the full right to sue on the Patents-In-Suit. Their claim to prescience, however, has no legal weight and should not be accepted by the Court. Rather, the Court should stay this action pending resolution of relevant proceedings before the Bankruptcy Court, which will settle the ownership of the Patents-In-Suit.

This action also should be transferred to the District Court for the Southern District of New York. Yahoo! has shown significant practical considerations and judicial efficiencies that favor transferring this action—implicating Zoetics'

"principal asset"—to the Southern District of New York. Zoetics, itself located mere blocks from that court, presents no relevant evidence in rebuttal, fails to show that Delaware would be more convenient for any witness, and ignores the important patent issues for which witnesses in the New York area would be relevant. On these facts, transfer is warranted.

ARGUMENT

I.     THE COURT SHOULD STAY THIS ACTION UNTIL
       THE NEW YORK BANKRUPTCY COURT RESOLVES
       THE OWNERSHIP OF THE PATENTS-IN-SUIT.

As demonstrated in Yahoo!'s opening brief, the Bankruptcy Proceeding will eliminate any question as to the ownership of the Patents-In-Suit and determine whether Zoetics will ultimately be left with standing to maintain this action. (Mem. at 9-11.)[1] Because Plaintiffs fail to articulate any prejudice that they would suffer as the result of a relatively brief stay, the Court should stay this action until resolution of relevant proceedings before the Bankruptcy Court. (Mem. at 8-13.)

---

[1]     Citations herein take the following forms: "Mem. at __" are to Yahoo!'s Opening Brief in Support of its Motion to Stay Action and Transfer Action to the Southern District of New York, dated April 21, 2006; "App. Ex. __" are to exhibits included in the Appendix of Exhibits submitted with Yahoo!'s opening brief, dated April 21, 2006; "McFall Decl. ¶ __" are to the Declaration of Lisa G. McFall, dated April 19, 2006; "Opp'n at __" are to Plaintiffs' Answering Brief in Opposition to Yahoo!'s Motion to Stay and Transfer, dated May 12, 2006; "Pls. App. Ex. __" are to exhibits included in the Appendix of Exhibits submitted with Plaintiffs' answering brief, dated May 12, 2006; "Hasler Decl. ¶ __" are to the Declaration of B. Lane Hasler, dated May 12, 2006; and "Supp. App. Ex. __" are to exhibits included in the Supplemental Appendix of Exhibits submitted herewith.

A.    The Ownership of the Patents-In-Suit is in Dispute
<u>and Will be Resolved by the Bankruptcy Court.</u>

Plaintiffs' contention that Yahoo!'s motion is based on "speculation regarding an ownership dispute" over the Patents-In-Suit (Opp'n at 6-8) is belied by at least the following undisputed facts:

- Zoetics gave AT&T powerful rights to recover the Patents-In-Suit should Zoetics default on its payments to AT&T or file for bankruptcy protection (Mem. at 4; Security Agreement, App. Ex. 2);

- Zoetics defaulted on its payments to AT&T and subsequently sought bankruptcy protection (Mem. at 5; Voluntary Petition, App. Ex. 3);

- AT&T filed a secured claim in the Bankruptcy Proceeding (Mem. at 5; Tucciarone Aff. ¶ 3, App. Ex. 3; App. Ex. 7); and

- Zoetics' alleged ownership of the Patents-In-Suit will be addressed in the Bankruptcy Proceeding (Mem. at 9-11).

Indeed, three days <u>before</u> Plaintiffs served their opposition to Yahoo!'s motion, Zoetics' counsel represented to the Bankruptcy Court that litigation concerning AT&T's rights was forthcoming:

> The Debtor and I have compiled a master claims matrix which we are reviewing to see if there are any claim objections.  <u>We have identified one significant claim objection, which we will be bringing.  It is to a secured claim filed by AT&T, which we believe is unsecured.  So we have that litigation.</u>

(5/9/06 Hearing Tr. at 2, Supp. App. Ex. 1 (emphasis added).)   Thus, contrary to Plaintiffs' suggestion that there is no "factual support" that a dispute over the Patents-In-Suit actually exists (Opp'n at 6-7), Zoetics itself has acknowledged that a dispute, which could ultimately result in foreclosure (or a liquidation sale) of the Patents-In-Suit, <u>does</u> in fact exist.  While Plaintiffs repeatedly argue that AT&T's claim lacks merit, that question

- 3 -

is more complex than Zoetics' facile offer of "simple math" conveys and, in any event, is precisely the question that the Bankruptcy Court will resolve.[2]

Moreover, Plaintiffs do not dispute that were the action before this Court to move forward before the ownership of the Patents-In-Suit is resolved in the Bankruptcy Proceeding, Yahoo! would be entitled to take discovery on the threshold issue of Zoetics' standing (Mem. at 10). *See Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995); *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993). In light of Zoetics' default, the strength of AT&T's security agreement, and the uncontested fact that AT&T served Zoetics with a Notice of Default prior to the commencement of the Bankruptcy Proceeding, Zoetics' standing in this action will need to be explored. But given that Zoetics itself has asserted that it "will be bringing" litigation to resolve that issue in the Bankruptcy Court, it is difficult to see the point of also litigating it here.

B.    Plaintiffs Will Not Be Prejudiced by a Short Stay.

In their opposition, Plaintiffs fail to identify any particular prejudice that they would suffer by virtue of a stay. (Opp'n at 9-10.) They contend merely that a stay would "prevent[] Zoetics from getting a just and speedy resolution to its complaint."

---

[2]    Plaintiffs contend that Appendix Exhibit 2 provides "concrete evidence" that there is no dispute over the Patents-In-Suit. (Opp'n at 6.) It does not. To the contrary, the Patent Assignment Abstract of Title makes plain that AT&T retained a security interest in the Patents-In-Suit, and the Security Agreement clearly sets forth the powerful rights to recover the Patents-In-Suit that Zoetics gave AT&T should Zoetics default on its payments or file for bankruptcy protection. (Patent Assignment Abstract of Title, Security Agreement (Schedule F), App. Ex. 2.) Indeed, Plaintiffs do not dispute that AT&T could force a sale of the Patents-In-Suit in a liquidation. (Mem. at 6.)

(Opp'n at 9.)  Of course, if such conclusory assertions were sufficient to defeat a stay, the Court would effectively be stripped of its inherent power to manage the cases on its docket.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  *See also Commissariat à L'Énergie Atomique v. Dell Computer Corp.*, No. 03-484, 2004 WL 1554382, at *2 (D. Del. May 13, 2004) (rejecting plaintiff's argument that it would be prejudiced because "stay would 'substantially delay' its right to adjudicate its claims").  Moreover, Zoetics' recent representations to the Bankruptcy Court that it will file its reorganization plan in about <u>four weeks</u> and that it will soon be bringing litigation over AT&T's claim to the Patents-In-Suit confirm that the Bankruptcy Proceeding is on track and that Plaintiffs would not be prejudiced by a brief stay of this action.  (5/9/06 Hearing Tr. at 2-3, Supp. App. Ex. 1.)  Notably, resolving a bankruptcy with one contested claim will almost certainly involve far less time and expense than litigating infringement and invalidity to trial in a two-patent case with 20 claims already asserted.

Plaintiffs' suggestion that they will be prejudiced by a stay because Yahoo! is somehow responsible for their more than two year delay in bringing this action (Opp'n at 9-10) also is contradicted by the record.  From Yahoo!'s perspective, after informing Zoetics that it was not interested in licensing U.S. Patent No. 5,930,479 (the "'479 Patent") in August 2004, the matter was closed.  (McFall Decl. ¶ 5.)  It was Zoetics that decided to subsequently switch from the counsel that had represented it prior to the Bankruptcy Proceeding (Eckert Seamans Chernin & Mellott) to new counsel (Niro Scavone), unfamiliar with the Patents-In-Suit or prior negotiations with Yahoo!.[3]

---

[3]    Six weeks after obtaining an order *nunc pro tunc* approving Eckert Seamans Chernin & Mellott as special intellectual property counsel (Bankruptcy
(Continued . . .)

Likewise, it was Zoetics that waited almost a year, from Yahoo!'s August 2004 letter until June 2005, to contact Yahoo! with a renewed demand. (McFall Decl. ¶ 6.)

Notwithstanding Zoetics' ten-month silence, within two months of receiving the June 15, 2005 letter from Zoetics' new counsel, Yahoo! provided a substantive response identifying various prior art references and informing Zoetics that Yahoo! concluded that the claims of the '479 Patent were invalid. (McFall Decl. ¶ 7; Pls. App. Ex. D.) Instead of bringing suit, Zoetics spent months vainly trying to serve Yahoo! with one-sided, pre-litigation discovery in the Bankruptcy Proceeding under Rule 2004 of the Federal Rules of Bankruptcy Procedure. (*See generally* Hasler Decl. ¶¶ 7, 8, Pls. App. Ex. F; App. Ex. 11.)[4] Yahoo! was ultimately forced to seek relief from Zoetics' antagonistic discovery efforts by bringing Zoetics' abuse of Rule 2004 and flagrant violations of the relevant procedural rules to the Bankruptcy Court's attention.[5] Only then did Zoetics (which apparently did not need pre-litigation discovery after all) change tacks and file this action, mooting its own discovery requests. (Hasler Decl. ¶ 8.)

---

(. . . continued.)
  Proceeding, Docket Entry No. 49 (Jan. 11, 2005)), Zoetics applied for an order approving Niro Scavone in the same capacity (App. Ex. 9).

[4]   Significantly, Zoetics has never filed or shown to counsel, despite requests, a copy of either an executed subpoena or proof of service of discovery on Yahoo! pursuant to Rule 2004.

[5]   *See, e.g., In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("[C]ourts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the Federal Rules of Civil Procedure in the context of adversary proceedings or contested matters.").

Plaintiffs also attempt to color the Court's resolution of this motion by alleging that Yahoo!'s "deliberate[] appropriat[ion of] its technology and Zoetics' competitive advantage" somehow drove it to bankruptcy. (Opp'n at 9.) However, the sworn affidavit submitted along with Zoetics' Voluntary Petition by its President, Joel Tucciarone, places the blame instead on its own "development of the anti-spam software [which] took longer than originally expected resulting in a significant period of capital expenditures with no corresponding revenue." (Tucciarone Aff. ¶ 4, App. Ex. 3.)

Nor can Zoetics seriously contend that Yahoo! "engineered" the filing of AT&T's secured claim in the Bankruptcy Proceeding "to further its goal of delay." (Opp'n at 4-5.) Zoetics hardly can be surprised that its largest creditor has asserted its contractual secured interest in Zoetics' "principal asset"—an asset for which Zoetics never bothered to pay and on which it still owes it over $4 million. (App. Ex. 3.)

Finally, Plaintiffs' repeated claim that "the Bankruptcy Court in New York . . . specifically authorized this action" is nothing more than wishful thinking. (Opp'n at 11; *see also* Opp'n at 4, 6, 9.) Plaintiffs point only to the order approving the retention of Niro Scavone, which nowhere mentions "this action," Yahoo!, or the Patents-In-Suit, and which nowhere accounts for the possibility of a secured claim asserted in these Patents. (App. Ex. 10.)

Simply put, Zoetics' attempts to play the victim should not be credited. In the course of its dealings with Yahoo!, Zoetics has been represented by no fewer than four law firms, including one that claims hundreds of millions of dollars in trial verdicts and license negotiations. (Supp. App. Ex. 2.) It has, for its own reasons, repeatedly delayed adjudication of its estate in the Bankruptcy Court, which would have resolved

AT&T's claim long ago.[6]  Meanwhile, Plaintiffs concede that action against Yahoo! "is in the early stages." (Opp'n at 10.)  In this context, Zoetics would not be prejudiced by a short stay of this litigation until the resolution of relevant proceedings in the Bankruptcy Court.

## II.     THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.

In addition, whether or not a stay is granted, this action should be transferred to the District Court for the Southern District of New York.  (Mem. at 13-25.) Plaintiffs oppose transfer on essentially three grounds:   (i) that the Bankruptcy Proceeding purportedly bears no relevance to this action; (ii) that the Court should not consider the availability of non-party witnesses potentially critical to Yahoo!'s defense; and (iii) that Yahoo!'s Delaware incorporation is sufficient in and of itself to defeat the transfer motion.  Plaintiffs' arguments are contrary to the record and to well-established law.

### A.     Practical Considerations and Judicial Efficiency Strongly Favor Transferring this Action to the Southern District of New York.

Zoetics' denials notwithstanding, the Bankruptcy Court for the Southern District of New York <u>will</u> determine the extent of AT&T's interest in the Patents-In-Suit and <u>will</u> determine whether or not Zoetics can exit bankruptcy able to sue on those Patents.  Transfer to the Southern District of New York will ensure that the same Court

---

[6]     In the Bankruptcy Proceeding, Zoetics moved to extend the time to file the relevant schedules and statements (Docket Entry Nos. 17, 18) and has moved at least <u>four</u> times to extend its time to file a re-organization plan (Docket Entry Nos. 59, 60, 77, 78, 100, 101, 128, 129).

that hears any appeal of those bankruptcy issues also hears any standing challenge in this action.  It will also ensure that the forum with appellate jurisdiction over Zoetics' "principle asset"—and the Court that may hear Yahoo!'s request for relief from the automatic stay to seek re-examination of one or more of the Patents-In-Suit—will be the same Court that will hear Yahoo!'s invalidity challenge in this action.

Despite Zoetics' attempts to distinguish it, this Court's decision in *Bank of America, N.A. (USA) v. U.S. Airways, Inc.*, No. 05-793, 2005 WL 3525680 (D. Del. Dec. 21, 2005) (Farnan, J.) remains applicable to this case.  In *Bank of America*, this Court did not, as Plaintiffs contend, transfer the case "because the underlying Complaint was 'functionally identical' to the administrative claims in the bankruptcy proceedings." (Opp'n at 19.)  Rather, the Court acknowledged the existence of a dispute between plaintiff, which contended that the case was not a "core proceeding," and defendant, which contended that the Complaint was "functionally identical" to the claims in the transferee district.  *See Bank of Am.*, 2005 WL 3525680, at *3.  The case was transferred because the transferee court was "in a far better position . . . to expeditiously decide" that, and other, critical issues and this Court "would have to expend considerably more time and resources to arrive at a just resolution."  *Id.*  Here too, the District Court for the Southern District of New York is better positioned to manage the case if and when it proceeds.  (Mem. at 15.)

The overlap in issues relating to standing has been discussed in Part I above.  But just as importantly, Yahoo! intends to assert counterclaims for a declaratory judgment that the Patents-In-Suit are invalid, challenging the very basis of Zoetics' forthcoming reorganization plan.  Yahoo! also intends to seek re-examination of one or

both of the Patents-In-Suit, a possibility Yahoo! noted in its opening brief.  (Mem. at 15-16.)  Although Plaintiffs state that they consent to Yahoo!'s filing counterclaims in this action without regard to the automatic stay of actions against a debtor (Opp'n at 20 n.2), Plaintiffs pointedly do <u>not</u> extend their consent to the filing of re-examinations of the Patents-In-Suit.  Without such consent, Yahoo! intends to seek the permission of the Bankruptcy Court in the Southern District of New York to file a petition for re-examination of one or both of the Patents-In-Suit.  Any appeal of that determination will be heard by the District Court in New York.  The importance and relatedness of the validity issues in this action to those relevant to the Bankruptcy Proceeding supports transfer independent of the significant standing issues these two proceedings involve.

B.     Significant Non-Party Witnesses Cannot Be Compelled to Testify in Delaware and Would be Available in New York.

In addition to the substantial practical considerations, transfer to the Southern District of New York also would assure Yahoo! that significant non-party witnesses would be available to testify at trial.  (Mem. at 17-22.)  Plaintiffs do not—and cannot—dispute that Messrs. Hall, Dworetsky and Murray are eye-witnesses with first-hand knowledge of the alleged conception and reduction to practice of the inventions, the prior art and the prosecution of the Patents-In-Suit.  Zoetics' argument that their testimony is irrelevant to claim construction and infringement is of no moment.  Such information <u>is</u> directly relevant to Yahoo!'s potential defenses in this action, including

the enforceability and validity of the Patents-In-Suit, much of which is unlikely to be in Zoetics' possession. (Mem. at 17-22.)[7]

Moreover, Plaintiffs' speculation that "it is highly questionable that Messrs. Hall, Dworetsky and Murray are . . . 'third party' witnesses who would be unwilling to travel to Delaware to testify at trial" does not constitute a relevant basis for the Court's determination. (Opp'n at 17.)[8]  Plaintiffs provide no support for the proposition that Yahoo!'s business relationship with non-party AT&T means that the convenience and unavailability of AT&T's non-party employees and agents somehow counts less in a transfer analysis.  Even if that were true, Plaintiffs provide no evidence that Mr. Dworetsky currently is in-house counsel for AT&T or that Mr. Murray currently is retained as outside counsel. (Opp'n at 16.)[9]

Further, Plaintiffs' contention that Yahoo! somehow bears the burden of establishing that non-party witnesses outside the subpoena power of the Court are in fact

---

[7]     Contrary to Zoetics' argument, Yahoo! need not at this stage of the litigation identify with particularity the "specific . . . issue[s]" that will be central to this case. (Opp'n at 16.)  It is enough that these non-party witnesses have information directly relevant to validity and enforceability. *See Nilssen v. Everbrite, Inc.*, No. 00-189, 2001 WL 34368396, at *3 (D. Del. Feb. 16, 2001) (Farnan, J.) (rejecting plaintiff's argument that non-party witnesses should not be considered in transfer analysis because defendant failed to explain the nature of witnesses' testimony; "identification of witnesses [including prosecuting attorney], especially when fact discovery has yet to take place, is sufficient for purposes of venue transfer analysis").

[8]     Contrary to Plaintiffs' assertion, it is not settled that the Court's 100-mile subpoena power is governed by the straight-line method. (Mem. at 20 n.9.)  However, even if it were, Plaintiffs have no basis for their contention that as of yet unidentified non-party witnesses who worked with Mr. Hall also would be subject to the subpoena power of this Court. (Opp'n at 1.)

[9]     The cases in this district only exclude a party's "own employees" from the "convenience of witnesses" factor. *See, e.g., Nilssen*, 2001 WL 34368396, at *2.

- 11 -

"reluctant to" testify in Delaware already has been "summarily rejected" by this Court. *Nilssen v. Everbrite, Inc.*, No. 00-189, 2001 WL 34368396, at *2-3 (D. Del. Feb. 16, 2001) (Farnan, J.) (rejecting plaintiff's argument that court should not consider non-party witnesses outside subpoena power because defendants did not allege that they actually would be unavailable for trial). *See also Memminger v. Infocure Corp.*, Civ No. 00-707, 2000 U.S. Dist. LEXIS 22077, at *13 (D. Del. Nov. 14, 2000) (Farnan, J.) ("The defendant . . . does not have to allege that the witnesses actually will be unavailable for trial to establish the necessary lack of 'convenience.'"). *See also 3Com Corp. v. D-Link Sys., Inc.*, No. 03-014, 2003 WL 1966438, at *2 (D. Del. Apr. 25, 2003); *Green Isle Partners, Ltd., S.E. v. Ritz-Carlton Hotel Co.*, No. 01-202, slip op. at 7 (D. Del. Nov. 2, 2001) (Farnan, J.); *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131-32 (D. Del. 1999) (Farnan, J.).[10]

Significantly, Plaintiffs nowhere dispute that it would be more convenient for those non-party witnesses to appear in New York. Nor do Plaintiffs identify a single witness who would not be subject to the subpoena power of the District Court for the Southern District of New York, or for whom Delaware would be more convenient. *See, e.g.*, *Memminger*, 2000 U.S. Dist. LEXIS 22077, at *14 (transferring action where defendant identified non-party witnesses subject to compulsory process in transferee forum and "[n]o representations have been made regarding witnesses located in

---

[10]    The cases cited by Plaintiffs—*Trilegiant*, *Datastrip* and *Startos*—in which the Court did not transfer the action despite the fact that non-party witnesses were outside its subpoena power (Opp'n at 14-17) are distinguishable on the ground that none involved related proceedings in the proposed transferee district, let alone proceedings going to the threshold issue of plaintiff's standing. Nor, as here, is there any indication that plaintiffs in those cases were headquartered down the street from the proposed transferee court.

Delaware"); *Green Isle Partners*, slip op. at 7  (transferring action where defendant identified non-party witnesses subject to compulsory process in transferee forum and plaintiff "has not identified any witnesses who would be inconvenienced by a trial in [transferred forum]").  Thus, Plaintiffs simply lack any evidentiary record in their favor on this important factor.

C.     New York Has a Far Greater Interest in this Action
       than Delaware and is the More Convenient Forum.

Plaintiffs do not contend that the Patents-In-Suit or the alleged infringement bear any particular relation to this forum.  Nor do they show that any of the parties maintains any offices, facilities or personnel in Delaware.  Significantly, Plaintiffs also do not show that ZoEmail has any ownership interest in the Patents-In-Suit and do not argue that it is an exclusive licensee.  (Opp'n at 2.)  Thus, under settled law, ZoEmail appears to lack standing to maintain this infringement action, *Ortho Pharm*, 52 F.3d at 1030-31, and Plaintiffs cite to no authority suggesting that this Court ought even to consider its Delaware organization as part of the transfer analysis.

Apart from their conclusory assertions about the unrelatedness of the Bankruptcy Proceeding, Plaintiffs' argument to keep the case in Delaware is based on only two facts—Yahoo!'s Delaware incorporation and the fact that Plaintiffs decided to sue here.  Neither factor withstands scrutiny, especially considering the overwhelming connections Plaintiffs (and this action) have to New York.

First, this Court repeatedly has transferred infringement actions despite the fact that the defendant was incorporated in Delaware.[11]  Second, Plaintiffs' decision to sue in Delaware ignores the apparent and undisputed efficiencies of litigating in New York, including, *inter alia*, (i) that the District Court for the Southern District of New York is less than a mile from Plaintiffs' headquarters and employees; (ii) that the New York Bankruptcy Court has jurisdiction over Zoetics' Bankruptcy Proceeding and will hear appeals of actions taken from the Bankruptcy Court relating to the Patents-In-Suit; and (iii) that litigation in New York would not require either party to retain local counsel.[12]  Zoetics, which is spending money owed to its creditors to prosecute this case, presumably should be trying to minimize its expenses, rather than hiring additional counsel and traveling to a court outside of its home state.[13]

Even putting all of these efficiencies aside, the strong interest New York has in this case remains clear.  Zoetics chose to file its Bankruptcy Proceeding with the

---

[11]  *See, e.g.*, *APV N. Am., Inc. v. SIG Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (Farnan, J.); *At Home Corp. v. Cox Commc'ns, Inc.*, No. 02-1486, 2003 WL 22350925, at *2 (D. Del. Oct. 8, 2003) (Farnan, J.); *Invitrogen Corp. v. Stratagene Holding Corp.*, No. 00-620, slip op., at 4-6 (D. Del. Apr. 12, 2001) (Farnan, J.) (App. Ex. 21); *Brunswick Corp. v. Precor Inc.*, No. 00-691, 2000 WL 1876477, at *2 (D. Del. Dec. 12, 2000).

[12]  Zoetics completely avoids Yahoo!'s contention that by transferring the action, the parties could avoid the continued expense associated with the retention of local counsel.  (Mem. at 24.)  Zoetics likewise fails to address how it even plans to pay local counsel or the fact that the docket sheet in the Bankruptcy Proceeding does not show the approval of Delaware counsel.  (Mem. at 24.)

[13]  Plaintiffs' argument that transfer should be denied because Niro Scavone is familiar with litigating patent cases in this Court should carry no weight.  (Opp'n at 20.)  Niro Scavone has litigated patent infringement actions in federal courts all over the country.  (Supp. App. Ex. 2.)  Indeed, they have filed several infringement actions in the Southern District of New York—the proposed transferee court.

Southern District of New York.  That jurisdiction is home to its business, employees and assets, and Zoetics' place of incorporation.  That court will dispose of Zoetics' assets, including its "principal asset," the Patents-In-Suit.  That court will hear Yahoo!'s motion to lift the automatic stay to allow a re-examination petition to be filed.  That court will approve or deny Zoetics' plan to establish a litigation trust to conduct this litigation and will approve or deny any license into which Zoetics might enter in the interim.  In short, that court will determine whether Zoetics can continue as a viable business and whether it can use the Patents-In-Suit to do so.  Against that background, Zoetics cannot seriously dispute that litigation involving the Patents-In-Suit belongs in the Southern District of New York.

<u>CONCLUSION</u>

For all of the foregoing reasons, and all of the reasons set forth in Yahoo!'s opening brief, Yahoo! respectfully requests that the Court (i) stay this action, including the response to the Complaint, further pleadings and discovery, until resolution of the ownership of the Patents-In-Suit in the Bankruptcy Court, and (ii) transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York, and grant whatever other and further relief it deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham (#2256)*

_____

Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Defendant Yahoo!, Inc.*

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
415.268.7000

Matthew M. D'Amore
Kyle W.K. Mooney
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
212.468.8000

Dated: May 26, 2006
522292

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Josy W. Ingersoll, Esquire
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 26, 2006 upon the following individuals in the manner indicated:

| **BY HAND** | **BY FEDERAL EXPRESS** |
|---|---|
| Josy W. Ingersoll, Esquire | Paul K. Vickrey, Esquire |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | NIRO, SCAVONE, HALLER & NIRO |
| The Brandywine Building | 181 W. Madison St., Suite 4600 |
| 1000 West Street, 17th Floor | Chicago, IL  60602 |
| Wilmington, DE  19801 | |

*/s/ Mary B. Graham (#2256)*

_____
                    Mary B. Graham (#2256)

510320

- 17 -