IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ZOETICS, INC. and ZOEMAIL, LLC   :
   :
      Plaintiffs,          :
   :
   v.              : Civil Action No. 06-108-JJF
   :
YAHOO!, INC.,           :
   :
      Defendant .      :

---

Josy W. Ingersoll, Esquire, Karen L. Pascale, Esquire, and Elena
C. Norman, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP,
Wilmington, Delaware.
Of Counsel: Paul K. Vickrey, Esquire, Douglas M. Hall, Esquire,
and Frederick C. Laney, Esquire, of NIRO, SCAVONE, HALLER & NIRO,
Chicago, Illinois.
Attorneys for Plaintiff.


Mary B. Graham, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, Delaware.
Of Counsel: Michael A. Jacobs, Esquire, of MORRISON & FOERSTER
LLP, San Francisco, California.
Matthew M. D'Amore, Esquire, and Kyle W.K. Mooney, Esquire, of
MORRISON & FOERSTER LLP, New York, New York.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

July 6, 2006
Wilmington, Delaware

**Farnan, District Judge**

Pending before the Court is Defendant's Motion To Stay
Action And Transfer Action To The Southern District Of New York.
(D.I. 10.)  For the reasons set forth below, the Court will deny
the Motion.

## BACKGROUND

Plaintiffs ZoEmail, a Delaware limited liability company,
and Zoetics, a New York corporation, filed this action seeking
damages, attorneys' fees, and injunctive relief from Defendant, a
Delaware corporation, for its alleged infringement of two patents
Plaintiffs recently purchased from AT&T, Inc.  (D.I. 1.)  On
October 20, 2004, sixteen months before filing its Complaint,
Zoetics filed for Chapter 11 bankruptcy in the United States
Bankruptcy Court for the Southern District of New York.
According to Defendant, Zoetics' resort to bankruptcy was spurred
at least partially by its inability to pay AT&T for the patents
it purchased.  (D.I. 11 at 5.)  In Bankruptcy Court, Zoetics
announced its intention to emerge from bankruptcy by "realizing
value from its Intellectual Property" by first "seeking a license
with certain significant parties which have infringed upon its
intellectual property" and thereafter retaining counsel to sue
for infringement.  (D.I. 13, Ex. 8 at 2-3.)  According to

2

Defendant, it is one of the "significant parties" to which
Zoetics was referring.  (D.I. 11 at 7.)

AT&T has filed a secured claim against Zoetics in Bankruptcy
Court based on a purported security interest it retained in the
Patents-in-Suit.  Plaintiffs dispute the validity of AT&T's
secured claim.  (D.I. 16 at 4-5.)  Meanwhile, the Bankruptcy
Court has granted Zoetics leave to retain counsel to pursue its
intellectual property claims.  (D.I. 13, Ex. 10 at 4.)

**DISCUSSION**

**I. Motion to Stay Action**

Defendant contends that the Court should stay this action
until the ownership of the Patents-in-Suit is resolved in the New
York Bankruptcy Court because it will simplify the issues before
this Court, it will not unduly prejudice Plaintiffs, and this
proceeding is still at an early stage.  Plaintiffs respond that
no litigation regarding the ownership of the Patents-in-Suit is
pending in the New York Bankruptcy Court, and that they would be
prejudiced by a stay at this time.  Because there is no
indication that the issue of patent ownership will be imminently
resolved in the Bankruptcy Court and because granting a stay will
prejudice Plaintiffs, the Court will deny Defendant's Motion to
Stay.

A.  <u>Legal Standard</u>

A Court has the "inherent power to conserve judicial resources by controlling its own docket," Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985), and the decision to stay a case is firmly within the discretion of the Court. Pegasus Development Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, at *3 (D. Del. May 14, 2003). In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Id. at *3-4 (quoting Xerox Corp. v. 3Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)).

B. Analysis

Defendant is arguing for a stay pending a decision regarding ownership of the Patents-in-Suit by the Bankruptcy Court. Defendant bases its argument on a claim filed by AT&T, an alleged secured creditor of Zoetics. Leaving aside the fact that Plaintiffs dispute the validity of the secured claim (D.I. 16 at 4-5), Defendant has not pointed to any precedent granting a stay under such circumstances. Furthermore, there is nothing to indicate when the Bankruptcy Court will take up the issue of ownership, or even if it plans to do so at all. In fact, the

4

Bankruptcy Court has allowed Zoetics to retain special intellectual property counsel to "prosecut[e] enforcement actions regarding the Intellectual Property Rights" (D.I. 13, Ex. 9 at 2), though Zoetics ultimately made plain its intention to recover on its intellectual property as part of its emergence strategy. (D.I. 13, Ex. 8 at 2.)

Defendant contends that granting a stay in this case will advance the objective of judicial economy (D.I. 11 at 10) without prejudicing Plaintiffs. (Id. at 12.) The Court disagrees. Staying the action pending a non-parallel proceeding in which the issue in question may be addressed[1] leaves too much uncertainty to substantially advance judicial economy. The Bankruptcy Court has not evidenced an intention to take up the patent ownership issue; rather, it permitted Zoetics to retain patent counsel in order to pursue its claims.

A secured claim in a bankruptcy proceeding, furthermore, is not tantamount to a challenge to Zoetics' patent ownership.

---

[1] Defendant repeatedly insists that the issue of patent ownership will be addressed by the Bankruptcy Court (D.I. 20 at 3) but can offer no support for that assertion except to say that Zoetics defaulted on its payment to AT&T and the latter has filed a secured claim in the Bankruptcy Proceeding. (Id.) All of the case law Defendant cites, on the other hand, involves pending proceedings that are either parallel, Summa Four, 994 F.Supp. at 581, or directly related to the issue in dispute. Landis v. N. Am. Co., 299 U.S. 248 (1966); Commissariat a L'Energie Atomique v. Dell Computer Corp., 2004 WL 1554382 (D. Del. May 13, 2004).

Zoetics has announced its intention to sue on its patents to emerge from bankruptcy (D.I. 13, Ex. 8 at 2), and the Bankruptcy Court has not objected.  It is therefore conceivable that, even if AT&T has a genuine secured claim, Zoetics could win a patent infringement suit, pay AT&T from the proceeds, and retain the patents.  Granting a stay pending the resolution of the bankruptcy proceedings would prejudice Zoetics by preventing it from carrying its reorganization plan to completion in a timely fashion.

The Court concludes that granting a stay would not simplify the issues in this case with such certainty as to substantially advance judicial economy, and that it would prejudice and disadvantage Plaintiffs.  Because neither of these factors weighs in favor of granting a stay, the Court is not persuaded that a stay is warranted because the case is still at an early stage.  Accordingly, the Court will deny Defendant's Motion to Stay Action.

**II. Motion to Transfer Action**

Defendant argues that substantial practical considerations, as well as other private and public factors, strongly favor transferring the action to the Southern District of New York.  Plaintiffs contend that Defendant has not met its burden of clearly showing that transfer is appropriate.  Because the Court

agrees with Plaintiffs that the factors do not weigh heavily in favor of transfer, it will deny Defendant's Motion to Transfer.

A.  Standard of Law

28 U.S.C. §1404(a) permits a court to transfer a case to any other district where it might have been brought[2] "for the convenience of parties and witnesses" or "in the interest of justice."  The purpose of the statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  In considering a §1404(a) transfer, the Court must balance a number of private and public interests.  Reyno v. Piper Aircraft Co., 630 F.2d 149, 159 (3d Cir. 1980).  The relevant private interests are:

> (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995). The relevant public interests are:

> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of the trial, (3) the administrative difficulty due to court

---

[2] It is undisputed that this action could have been brought in the Southern District of New York.  (D.I. 11 at 13.)

congestion, (4) the local interest in deciding local
controversies in the home forum, (5) the public policies of
the two fora, and (6) the trial judge's familiarity with the
applicable state law in diversity cases.

Id.  When ruling on a motion to transfer, a court must "balance
all of the relevant factors and respect that a plaintiff's choice
of forum is entitled to substantial deference and should not be
lightly disturbed."  Stratos Lightwave, Inc. v. E2O
Communications, Inc., 2002 U.S. Dist. LEXIS 5653, at *5 (D. Del.
Mar. 26, 2002).  The moving party has the burden to establish
that "the balance of interests strongly weighs in favor of the
transfer," and the transfer will be denied if the factors balance
evenly or weigh only slightly in favor.  Id.

   B. Practical Considerations

   Defendant first contends that the public interests of
practical considerations and judicial efficiency strongly favor
transfer because the District Court for the Southern District of
New York will be "better positioned to manage the case if and
when it is appropriate to proceed."  (D.I. 11 at 15.)  Defendant
also argues that judicial efficiency militates for transfer
because Defendant may have to ask the Bankruptcy Court to lift
the automatic litigation stay to allow it to pursue counterclaims
or file for reexamination of the Patents-in-Suit, a decision that
would be reviewed by the District Court for the Southern District

of New York.  (<u>Id</u>. at 15-16.)  Finally, Defendant argues that the transferee court would be better positioned to adjudicate any standing disputes with regard to ownership of the patents, since it would have already heard any related appeals from the Bankruptcy Court.  (<u>Id</u>. at 16.)

The Court concludes that these considerations do not weigh strongly in favor of transfer.  As an initial matter, many of Defendant's arguments rely on the proposition that the issue of patent ownership will be imminently resolved by the Bankruptcy Court, which the Court concluded, <u>supra</u>, is not the case. Moreover, while this Court has previously transferred an action to a district where a Chapter 11 case was pending, it did so in large part because the case depended on the interpretation of orders already issued by the transferee judge, and because the case involved administrative claims inextricably intertwined with the bankruptcy proceeding.  <u>Bank of America, N.A. v. US Airways, Inc.</u>, 2005 U.S. Dist. LEXIS 34902, at *8-9 (D. Del. Dec. 21, 2005).

In this case, there are no existing rulings by Defendant's proposed transferee court that are necessary to resolve the issues.  Nor are the details of Zoetics' reorganization plan currently relevant, since the plan has not been filed yet.  (<u>See</u> D.I. 11 at 12.)  Ownership of the patents-in-suit has not been

challenged in the New York courts, and there is no parallel
litigation already in progress.  Most importantly, the bankruptcy
proceeding is before the Bankruptcy Court, not the District
Court, and were a transfer to be granted, the patent infringement
case would not be heard by the judge who will be overseeing
Zoetics' Chapter 11 case.  Defendant attempts to avoid this
problem by insisting that judicial efficiency would be advanced
because the District Court "would have already heard any related
appeals" (Id. at 16), but such speculation does not weigh
strongly in favor of transfer.  Defendant's argument that
Defendant will need to petition the Bankruptcy Court to lift or
modify the automatic litigation stay in order to file
counterclaims or auxiliary claims runs into the same problem, and
the argument that the District Court in the Southern District of
New York would hear those appeals is again unpersuasive.

    While it may have been marginally more expedient for this
case to have been brought in the Southern District of New York,
the considerations presented by Defendant do not militate in
favor of transfer so as to outweigh Plaintiffs' choice of forum.
Simply put, the Court can find no compelling reason why the
District of Delaware is not an appropriate venue to resolve the
issue of patent ownership.  In fact, a resolution of the

10

ownership dispute in this Court could as easily assist the
Bankruptcy Court in carrying out its function.

    C.   Convenience and Availability of Non-Party Witnesses

    Defendant argues that the convenience of non-party witnesses
weighs strongly in favor of transfer.  "Convenience of the
expected trial witnesses is the most important factor to consider
when determining whether or not transfer is appropriate."
Memminger v. Infocure Corp., 2000 U.S. Dist. LEXIS 22077 at *12-
13 (D. Del. Nov. 14, 2000).  Though the convenience of the non-
party witnesses is only an issue to the extent that the witnesses
"may actually be unavailable for trial," Mentor Graphics Corp.
v. Quickturn Design Sys., 77 F. Supp. 2d 505, 510 (D. Del. 1999),
"it is sufficient for purposes of venue transfer analysis if the
witness is not subject to a Court's subpoena power." Nilssen v.
OSRAM Sylvania, Inc., 2001 U.S. Dist. LEXIS 25570, at *8 (D. Del.
May 1, 2001); see also Anic v. DVI Fin Servs., 2004 U.S. Dist.
LEXIS 11562, at *8 (D. Del. June 23, 2004).  The Court has the
power to subpoena a witness who can be served within its
District, or at a place within 100 miles of the courthouse. Fed.
R. Civ. P. 45(b)(2).

    Most of the witnesses whose convenience Defendant claims
strongly favors transfer are located in AT&T's Florham Park, New
Jersey facility or in Berkeley Heights, New Jersey. (D.I. 11 at

18-20.)  However, Defendant admits that both of these locations
are within 100 miles of Wilmington, Delaware using a straight-
line measurement.  (Id. at 19.)  Defendant argues that their
presence still militates in favor of transfer because using an
"ordinary and usual travel route" measurement puts them outside
of the Court's subpoena power while they would be within the
subpoena power of the transferee court by any measure.  (Id.)
Thus, transferring would "avoid later disputes."  (Id. at 21.)
There is, however, no genuine dispute that Delaware courts apply
the modern approach, which measures "distance by a straight line
on a map," as this method is the better construction of Rule 45
and is easier to apply in practice.  Hill v. Equitable Bank,
Nat'l Ass'n, 115 F.R.D. 184, 186 (D. Del. 1987).  By contrast,
the cases cited by Defendant in favor of the "ordinary and usual
travel route" approach are more than 50 years old and are from
district courts outside of Delaware.  (D.I. 11 at 20.)  Thus, the
Court concludes that these witnesses are within the subpoena
power of the Court and considered available to testify for the
purposes of venue transfer.

        Defendant also asserts that two of the attorneys involved in
prosecuting the Patents-in-Suit are outside the subpoena power of
this Court, but within the subpoena power of the New York court,
weighing heavily in favor of transfer.  Defendant claims that

these witnesses would testify to issues of claim construction and the validity and enforceability of the Patents-in-Suit.

In response, Plaintiffs argue that Defendant has not shown with sufficient specificity why the witnesses' testimony would be necessary, and that Defendant has not shown that either would be reluctant to travel to Delaware in order to testify.  As to the first argument, the Court concludes that Defendant may have its reasons for calling the prosecuting attorneys, given the attorneys' first-hand involvement in prosecuting the patents and their knowledge thereof.  (See D.I. 13, Ex. 17 and 18.)  As to the second, Defendant bears no burden to show that the witnesses it plans to subpoena would be "reluctant" to testify.  "It is sufficient... [that] the witness is not subject to a Court's subpoena power."  Nilssen, 2001 U.S. Dist. LEXIS 25570, at *8.  Thus, the Court concludes that the convenience of the prosecuting attorneys is a factor weighing in favor of transfer.

D.   Convenience of the Parties

Defendant argues that because Plaintiffs' principal place of business is mere blocks away from the District Court for the Southern District of New York, the convenience of the parties weighs in favor of transfer.  However, "a plaintiff's choice of forum is a paramount consideration not to be lightly disturbed." Mentor Graphics, 77 F. Supp. 2d. at 509.  Furthermore, while the

plaintiff's choice of forum is generally given less deference where the plaintiff has not chosen his home turf, a defendant's incorporation in the chosen forum is "a rational and legitimate reason for choosing the forum" that cannot be disregarded. <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *6-7.  Having incorporated in the forum state, the defendant "should not now complain that another corporation has chosen to sue it here." <u>Id</u>. at *7.

Defendant in this case is incorporated in Delaware and admits that "neither Delaware nor the Southern District of New York is significantly more convenient than the other" for itself. (D.I. 11 at 24).  Thus, the convenience of Defendant is not a factor weighing in either direction.  As for the convenience of Plaintiffs, they have chosen the forum of Defendant's incorporation – a "rational and legitimate" choice that is entitled to deference.   <u>Stratos</u>, 2002 U.S. Dist. LEXIS 5653, at *7.  The Court concludes that the convenience of the parties does not weigh in favor of transfer.

    E.   <u>Local Interest in the Controversy</u>

Finally, Defendant argues that because Zoetics is in bankruptcy in the Southern District of New York, the local interest in the controversy weighs in favor of transfer. However, as discussed <u>supra</u>, the bankruptcy proceeding and the

patent infringement suit are neither identical nor parallel controversies.  Further, as Defendant acknowledges, "[p]atent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy." Stratos, 2002 U.S. Dist. LEXIS 5653 at *8; see also Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc., 2005 U.S. Dist. LEXIS 2825, at *8 (D. Del. Feb. 15, 2005).  Therefore, the Court concludes that the Southern District of New York does not have a local interest in the controversy.

F.   Conclusion

Although "[c]onvenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate," Memminger, 2000 U.S. Dist. LEXIS 22077 at *12-13, the Court concludes that the potential unavailability of the attorneys who prosecuted the patent – the sole factor weighing in favor of transfer – is insufficient to overcome the "paramount" consideration of Plaintiffs' choice of forum.  Mentor Graphics, 77 F. Supp. 2d. at 509.  Plaintiffs had a legitimate reason for choosing to sue in Delaware, and Defendant has not carried its burden of negating that choice. Accordingly, the Court will deny Defendant's Motion to Transfer Action to the District Court for the Southern District of New York.

15